Filed 11/12/13  Conservatorship of Mouton CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| Conservatorship of the Person and Estate of LOUIS MOUTON, JR. | |
| | B241734 |
| CRAIG A. SMITH, as Conservator, etc., | (Los Angeles County Super. Ct. No.  BP115583) |
| Petitioner and Appellant, | |
| v. | |
| SANDRA N. BALDONADO, | |
| Objector and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County. Thomas C. Falls, Judge.  Affirmed.

Keith S. Walker for Petitioner and Appellant.

Robert L. Kern and Russell A. Dalton, Jr., for Objector and Respondent.

In the underlying action, the probate court appointed respondent Sandra N. Baldonado under Evidence Code section 730 to evaluate the interests of Louis Mouton, Jr., regarding whom appellant Craig A. Smith serves as conservator. Smith challenges a $4,319.25 fee award to Baldonado. We affirm.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Smith is a cousin of Mouton, who retired in 1979 and has no children. In March 2009, the Public Guardian of the County of Los Angeles filed a petition to initiate a conservatorship regarding Mouton. To represent Mouton, the probate court appointed attorney James A. Morris, a member of the Probate Volunteer Panel (PVP).[1] Since June 2009, Smith has served as Mouton's conservator. Inventories and appraisals of Mouton's belongings and property disclosed assets exceeding $1.5 million.

At some point, Mouton moved from his home to a retirement center in San Dimas, where he entered into a putative marriage with Roiece Sunny Cooper, who also resided in the retirement center. In November 2010, Smith filed a petition for exclusive authority to give medical consent for Mouton. Smith sought, inter alia, the authority to have Mouton placed in a secured perimeter area of the residential center, and a determination that Mouton lacked the capacity to enter into a marriage or registered domestic partnership. In support of the petition, Smith submitted a declaration from Dr. Samir Anabi, who opined that Mouton suffered

---

[1]     The PVP provides a pool of private attorneys from which the probate court may select counsel to represent a conservatee. (See *Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 65, fn. 1; Prob. Code, § 1470, subd. (a); Los Angeles County Superior Court Rules, rule 4.123.)

2

from dementia, and lacked the ability to understand the duties and obligations of marriage.

On February 23, 2011, at a hearing on the petition, the probate court granted the petition to the extent that Smith sought authority over Mouton's medical care, but deferred its ruling regarding Mouton's capacity to marry. The court, on its own motion, appointed PVP attorney Baldonado under Evidence Code section 730 as an expert to evaluate Mouton's best interests and report them to the court.

On March 28, 2011, Baldonado submitted her first report to the probate court, stating that she had visited Mouton, who was then living in a secured perimeter area of the San Dimas retirement center. Also present during the visit was Cooper. Baldonado stated that she was unable to discover any reason for Mouton's placement in the secured perimeter area, and recommended that he be moved to the regular living facility so that he and Cooper could see each other "under more pleasant circumstances."

In a second report dated June 7, 2011, Baldonado stated that Mouton had been relocated to a regular but "dreary" room in the San Dimas residential center. According to Baldonado, Mouton was unhappy in the San Dimas residential center, and wanted to return to his home to live there with Cooper. Baldonado further stated that Mouton "would be better served by a conservator . . . who cares about taking care of him and [does] not make financial decisions that only benefit the conservator . . . ." Regarding the putative marriage, she recommended that a postnuptial agreement and estate plan "could be negotiated . . . so that everyone is protected," and that Mouton and Cooper "should be left to enjoy each other with what time is left of their lives." She also recommended that the probate court explore the possibility of returning Mouton to his home.

3

A hearing was set for November 21, 2011, to address Mouton's place of residence and other matters. On that date, Baldonado filed her third report and a declaration supporting her request for a fee award.[2] Her report recommended that Mouton and Cooper be permitted to reside together in residential unit in Claremont. Her declaration requested a fee award of $4,750, stating that she had provided 19 hours of services, at an hourly rate of $250. Attached to the declaration was an itemized statement of her services and the hours allocated to them. Included in the request was 1.5 hours that she anticipated for her appearance at the November 21, 2011 hearing.

The November 21, 2011 hearing involved morning and afternoon sessions. During the hearing, the court ordered that Mouton and Cooper be relocated to the residential unit in Claremont. The court again deferred its ruling regarding Mouton's capacity to marry, and set a hearing regarding that matter for March 7, 2012.

In addition, the court addressed Baldonado's fee request. In view of the length of the hearing, the court approved fees of $5,500 for Baldonado reflecting 22 hours of services, including 3 additional hours for her appearance at the hearing, beyond the 1.5 hours that she had anticipated. The fees were to be paid by the conservatorship estate.

In a report dated March 6, 2012, Baldonado stated that Mouton's putative marriage had been annulled in another action. She recommended that the probate court discharge her "as [her] 730 function ha[d] been completed," noting that Mouton had been moved to a more appropriate placement, where he and Cooper

---

[2]    At our request, appellant has provided a copy of Baldonado's declaration in support of her fee request. We hereby augment the record to include the declaration. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

4

were living together.  She requested $4,319.25 in additional fees and costs, but provided no itemization or other documents to support the request.

At the March 7, 2012 hearing, the probate court relieved Baldonado and took the issue of Mouton's capacity to marry under submission.  Regarding Baldonado's fee request, Smith's counsel, Keith S. Walker, asked the court to direct Baldonado to submit a declaration and documentation "detailing her time," including the services she had provided in connection with the prior $5,500 fee award, and to allow him to respond to it.**3**  Baldonado agreed to provide the specified documentation.  The court further stated that Walker would be permitted to submit a responsive declaration, after which the matter would be taken under submission.

On March 16, 2012, Baldonado filed a declaration and supporting documentation limited to her services on and after November 21, 2011. The declaration stated that "[f]rom the date of November 21, 2012 [*sic*]," she had provided approximately 17 hours of services at an hourly rate of $250, resulting in outstanding fees totaling $4,319.25.  Accompanying the declaration was an itemization reflecting hours of service on and after November 21, 2011, including four hours related to the November 21, 2011 hearing (1.5 hours for a meeting with Mouton and 2.5 hours for the afternoon session).

Walker filed responsive declaration on March 23, 2012, asserting that Baldonado failed to provide a full itemization supporting her fee requests. Referring to the court's order of November 21, 2011 allowing Baldonado $5,500 in fees for her services up to that time, Walker again erroneously asserted that "[n]o

---

**3**     At the hearing, Walker stated that Baldonado had been awarded fees earlier "for which we didn't have an itemization."  In fact, on November 21, 2011, Baldonado submitted both a declaration and an itemization of her fees.

5

written declaration or billing records were submitted with respect to that award . . . ." Noting that Baldonado requested four hours for the November 21 hearing, Walker further stated that he "assumed that that time was included in the 22 hours for which Ms. Baldonado was allowed compensation at the conclusion of the November 21 hearing, but that cannot be determined without all of Ms. Baldonado's billing records." He also challenged other items, arguing that Baldonado had allocated an excessive amount of time to certain services and provided services outside the scope of her appointment. He stated: "In light of the foregoing, I am not opposed, if the Court sees fit to do so, to vacating the order submitting the matter of Ms. Baldonado's fees . . . , in order to give her an opportunity to respond to these concerns."

The court did not vacate its order regarding the resolution of Baldonado's fee request or request additional evidence from her. On March 29, 2012, it issued a minute order stating: "730 Evaluator fees are approved in the amount of $4,319.25."**4** The order also determined that Mouton lacked the capacity to marry, but permitted him to cohabit with anyone he wished. On June 1, 2012, Smith noticed his appeal from the March 29, 2012 minute order. Later, on June 8, 2012, the probate court issued a written order reflecting the rulings in the March 29, 2012 minute order.

---

**4** The record as provided by Smith contained only an incomplete copy of the March 29, 2012 minute order. At our request, Baldonado has provided a complete copy of the order. We hereby augment the record to include the full order. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

6

## DISCUSSION

On appeal, Smith challenges only the $4,319.25 fee award.  As explained below, we reject his contentions.[5]

A. *Governing Principles*

Baldonado was appointed under Evidence Code section 730, which provides:  "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion . . . may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required.  The court may fix the compensation for these services, if any, rendered by any person appointed under this section, in addition to any service as a witness, at the amount as seems reasonable to the court."  In civil actions, the payment of that compensation is "apportioned and charged to the several parties in a proportion as the court may determine."  (Evid. Code, § 731, subd. (c).)

In view of these provisions, a trial court must (1) decide whether an appointed expert should receive any compensation for his or her services, (2)

---

[5]     The parties' briefs discuss whether Smith noticed his appeal from an appealable order.  The notice of appeal specifies the pertinent order as the March 29, 2012 minute order.  We conclude that because the March 29, 2012 ruling on the fee award was entered in the court's minutes and required no further order to secure its efficacy, it constituted a final determination (7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 54, pp. 589-590), and was thus appealable as a final ruling on a collateral matter directing the payment of money (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368).  Although the June 8, 2012 order also referred to the fee award, nothing before us suggests that the
*(Fn. continued on next page.)*

determine a reasonable amount of compensation and (3) state which party or parties will bear what portion of the fees and costs. (*In re Marriage of Laurenti* (2007) 154 Cal.App.4th 395, 403.) With respect to item (2), to determine reasonable compensation, the court must "review the [expert's] bill and give some consideration to the value of the services provided." (*Id*. at p. 404.) The court's determinations regarding these matters are reviewed for an abuse of discretion. (*Dodge v. San Diego Electric Ry. Co.* (1949) 92 Cal.App.2d 759, 769 [interpreting predecessor statute].)

B. *Smith Has Not Shown That the Probate Court Disregarded Walker's Declaration*

Smith contends the probate court approved Baldonado's fee request without reading and considering Walker's March 23, 2012 declaration opposing the request. In support of this contention, Smith observes that Walker's declaration raised several challenges to the request, yet the probate court's ruling was silent regarding the reasons for its decision. As explained below, that silence mandates the rejection of Smith's contention.

Under Evidence Code section 664, a court is presumed to have done its duty, absent proof to the contrary (*Newman v. Los Angeles Transit Lines* (1953) 120 Cal.App.2d 685, 691).[6] Thus, when a statute does not require express findings and the trial court makes none in ruling pursuant to the statute, a reviewing court will presume that the court "'was aware of and followed the applicable law'" (*People v.*

---

probate court intended the June 8, 2012 order to be its effective ruling regarding the award. (See *Holden v. California Emp. etc. Com.* (1950) 101 Cal.App.2d 427, 430-431.)

[6] Evidence Code section 664 states in pertinent part: "It is presumed that official duty has been regularly performed."

8

*Stowell* (2003) 31 Cal.4th 1107, 1114-1115, quoting *People v. Mosley* (1997) 53 Cal.App.4th 489, 496-497; *Thompson v. Thames* (1997) 57 Cal.App.4th 1296, 1308.) The effect of this rebuttable presumption is "to impose upon the party against whom it operates the burden of proof as to the nonexistence of the presumed fact." (*Gee v. California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 718.)

Here, Evidence Code section 730 imposes no duty on a court to state that it examined all declarations submitted in connection with a fee award, and Smith requested no such statement. Under these circumstances, we will presume that the probate court read and considered the declarations submitted in connection with the fee request, absent evidence to the contrary. (*People v. Stowell*, *supra*, 31 Cal.4th at pp. 1114-1115.) Because the record contains no such evidence, Smith's contention fails. (*Ibid.*)

C.  *There Was an Adequate Basis For the Court's Ruling*

In an effort to show that the probate court abused its discretion in approving the fee award, Smith argues that Baldonado's showing in support of her requested fee was defective. Generally, "[d]iscretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) Smith's principal contention is that Baldonado sought fees for services outside the scope of her appointment. In addition, he appears to suggest that she sought duplicative fees, "padd[ed]" her request, and relied on inconsistent time records. For the reasons discussed below, his contentions fail.

On appeal, an order is presumed to be correct when the record is silent regarding the court's reasons for its decision. (*Corenevsky v. Superior*

9

*Court* (1984) 36 Cal.3d 307, 321; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; *In re Marriage of Aninger* (1990) 220 Cal.App.3d 230, 238.)  Because we review the ruling, rather than the trial court's reasons, we will affirm an order "'if it is correct on any theory apparent from the record.'"  (*Wal-Mart Real Estate Business Trust v. City Council of City of San Marcos* (2005) 132 Cal.App.4th 614, 625, quoting *Blue Chip Enterprises, Inc. v. Brentwood Sav. & Loan Assn.* (1977) 71 Cal.App.3d 706, 712.)  Thus, when the court made no express findings in approving a discretionary fee award, we infer all findings necessary to support the award and then examine the record for the existence of substantial evidence.  (*Finney v. Gomez* (2003) 111 Cal.App.4th 527, 545.)  In this regard, "the power of an appellate court begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trier of fact]."  (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, emphasis omitted.)

Here, the record discloses an adequate evidentiary basis for the $4,319.25 fee award.  On March 15, 2012, Baldonado submitted a declaration in support of her request for fees in that amount and an itemization of her hours.  Under the principles discussed above, her showing was sufficient to support the award.

Smith contends that Baldonado's evidentiary showing in support of her fee request was insufficient under rule 4.127(b)(1) of the Los Angeles County Superior Court Rules, which governs the compensation of PVP attorneys appointed as legal counsel to represent conservatees.  (See Los Angeles County Superior Court Rules, rule 4.126 ["PVP Attorney appointments are personal and cannot be delegated to other attorneys.  Only the PVP attorney appointed by the court may render legal services to the client and appear at hearings."].)  However, that rule is inapplicable here, as Baldonado was appointed as an expert under Evidence Code section 730.

10

That provision affords a court authority only "to appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert," but not to serve as legal counsel for a party to a proceeding. Accordingly, notwithstanding the probate court's occasional references to Baldonado as "730 counsel" for Mouton, she did not act as his legal representative.[7]

In an apparent effort to discredit Baldonado's showing on appeal, Smith asserts that Walker's March 23, 2012 declaration raised "serious questions" regarding Baldonado's showing. As explained below, Walker's declaration establishes no abuse of discretion by the probate court.

### 1. *Baldonado Requested No Fees Beyond the Scope of the Appointment*

Relying on Walker's declaration, Smith maintains that Baldonado requested fees for services beyond the scope of her appointment. Walker's declaration stated that Baldonado had improperly requested compensation for .35 hours spent in conversation with one of Mouton's friends regarding the purchase of furniture for

---

[7] In a related contention, Smith's reply brief also suggests the probate court disregarded the factors relevant to a fee award for counsel representing a party in a probate proceeding, pointing to *Conservatorship of Levitt* (2001) 93 Cal.App.4th 544, *Estate of Downing* (1982) 134 Cal.App.3d 256, and *Estate of Walker* (1963) 221 Cal.App.2d 792. Those decisions are inapposite, however, as they address fee awards to conservators and attorneys acting as legal counsel in probate proceedings. (*Conservatorship of Levitt*, *supra*, 93 Cal.App.4th at pp. 548-551; *Estate of Downing*, *supra*, 134 Cal.App.3d at pp. 266-268; *Estate of Walker*, *supra*, 221 Cal.App.2d at p. 796.) Because Baldonado was appointed as an expert pursuant to Evidence Code section 730, the probate court's discretion was governed exclusively by that statute, which requires only that the court determine a "'reasonable'" amount of compensation. (*City of Burbank v. Nordahl* (1962) 199 Cal.App.2d 311, 328 [applying predecessor statute].)

Mouton and Cooper, and that she had violated her duty of confidentiality to Mouton by speaking with Cooper. We reject this contention.

The record establishes that the probate court did not appoint Baldonado to serve as Mouton's legal counsel, but instead relied on her to provide information regarding a broad range of issues related to Mouton's welfare. On June 8, 2011, at a hearing on Mouton's capacity to marry and other matters, Walker asked the probate court whether Mouton had two attorneys, Morris and Baldonado. The court replied that Baldonado had been appointed to represent Mouton's best interest "to the court [under section] 730" regarding several matters, including housing, medications, and marriage. Baldonado's appointment thus encompassed meetings with Mouton's friend and Cooper to discuss issues such as furniture and the putative marriage. Furthermore, because Baldonado was not appointed to provide legal services to Mouton, her contact with Cooper violated no duty of confidentiality. (See 1 Witkin, Cal. Procedure (5th ed. 2008) Attorneys, § 90, pp. 125-127 [attorney's duty of confidential arises from attorney-client relationship carrying fiduciary obligations].) Accordingly, the probate court, in approving the $4,319.25 fee award, did not err in concluding that Baldonado sought no compensation for services beyond the scope of her appointment.


2. *Baldonado Sought No Duplicative Fee Award*

To the extent Smith suggests on appeal that Baldonado sought duplicative fees, we conclude that the probate court had an adequate basis to reject that challenge, as presented in Walker's declaration. Walker's declaration asserted that Baldonado's $4,319.25 fee request might include services for which Baldonado had been awarded compensation at the November 21, 2011 hearing, when the probate court approved $5,500 in fees. In support of this contention, Walker stated

12

that Baldonado had never provided documentation to support the $5,500 fee award. Walker further stated that Baldonado's March 15, 2012 declaration in support of the $4,319.25 fee request appeared to seek compensation for 4.0 hours of services related to the November 21, 2011 hearing, in addition to the 4.5 hours related to that hearing that the probate court had incorporated in the $5,500 award.

We conclude that Walker's declaration does not establish that the probate court erroneously awarded duplicative fees. Generally, when the evidence underlying an order consists of conflicting declarations, the rule applicable to our review "is the same as that governing oral testimony, namely, that it is primarily for the lower court to determine the credibility of [declarants] and the weight of their averments, and its determination is rarely disturbed on appeal." (*Hammel v. Lindner* (1964) 224 Cal.App.2d 426, 431-432.) No circumstance is presented warranting departure from that rule.

To begin, we observe that contrary to Walker's declaration, Baldonado had submitted documentation to support the $5,500 fee award. On November 21, 2011, Baldonado filed a declaration and supporting itemization requesting compensation for 19 hours of services, including an anticipated 1.5 hours for the hearing on that date. Later, during the November 21, 2011 hearing, the probate court awarded her $5,500, which included fees for an additional 3 hours incurred in connection with the hearing, based on the court's observation of the proceedings.

We recognize that Baldonado's March 15, 2012 declaration provided no documentation regarding the $5,500 fee award, despite her agreement to provide such documentation. Nonetheless, her November 21, 2011 declaration and supporting itemization had previously been submitted when the court approved the first fee request (which Smith does not challenge). Thus, when the court later approved the $4,319.25 fee award, it had before it both Baldonado's November 21,

13

2011 and March 23, 2012 declarations, along with their supporting documentation. In addition, Walker had submitted his own declaration describing the compensation Baldonado had already been awarded in connection with the November 21, 2011 hearing. Viewed collectively, this evidence establishes that the probate court had notice of any potentially duplicative request, and also supports a finding that Baldonado provided a total of 8.5 hours of services on November 21, 2011. Accordingly, Walker's declaration is insufficient to establish that Baldonado obtained duplicative fees.

### 3. *Baldonado Requested No Excessive Fees*

To the extent Smith also suggests on appeal that Baldonado's fee request included "padded" items and relied on "inconsistencies" in time records, his contention fails for similar reasons. Regarding this contention, Walker's declaration identified several services that he opined could have been provided in less time or were unnecessary. In addition, he noted that Baldonado's time records for certain communications with him and other activities were inconsistent with his own time records. However, under the principles governing our review, Walker's declaration does not establish error, as we defer to the probate court's resolution of conflicts in the parties' showings. In sum, Smith has shown no abuse of discretion in the probate court's determination of the amount of the fee award.

### D. *Smith Made No Request For an Evidentiary Hearing*

Smith contends the trial court denied him due process by failing to conduct an evidentiary hearing on the $4,319.25 fee request. Generally, declarations may be employed in the resolution of contested probate matters when the parties do not object to their use and adopt that means of supporting their positions. (*Estate of*

14

*Bennett* (2008) 163 Cal.App.4th 1303, 1309.)  We conclude that Smith has failed to preserve his contention for appeal, as he never asked for an evidentiary hearing, and his counsel expressly requested the procedure that the probate court implemented to resolve the fee request.

Generally, an appellant forfeits the right to attack error by expressly or impliedly agreeing at trial to the ruling or procedure objected to on appeal. (*Redevelopment Agency v. City of Berkeley* (1978) 80 Cal.App.3d 158, 166.)  Here, the probate court adopted the procedure that Walker proposed for resolving the fee request, namely, it directed Baldonado to provide a declaration and supporting documentation, and permitted Walker to submit a responsive declaration. Although Walker's declaration identified purported deficiencies in Baldonado's showing, he requested no evidentiary hearing.  Rather, he stated:  "In light of the foregoing, I am not opposed, *if the Court sees fit to do so*, to vacating the order submitting the matter of Ms. Baldonado's fees . . . , in order to give her an opportunity to respond to these concerns."  (Italics added.)  For the reasons discussed above (see pt. C., *ante*), the probate court was not obliged to request further evidence, as there was already an adequate showing to support the fee award.  Thus, the court, in approving the award, employed the precise procedure that Walker proposed.  In sum, Smith has forfeited his contention of error.[8]

---

[8]     Baldonado has submitted a motion for sanctions, arguing that Smith's appeal is frivolous.  She seeks the dismissal of the appeal and an award of the attorney fees she has incurred on appeal.  Generally, sanctions for a frivolous appeal are granted only when the appeal was prosecuted for an improper motive or is indisputably meritless.  (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)  Upon review, we conclude that this appeal does not meet the demanding standards under *Flaherty* for the imposition of sanctions, and deny the motion.

Baldonado's motion also seeks an award of her attorney fees incurred on appeal under Evidence Code section 730.  However, the motion acknowledges that on February
*(Fn. continued on next page.)*

## DISPOSITION

The order approving the $4,319.25 fee award is affirmed.  Baldonado is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.

We concur:


EPSTEIN, P. J.


WILLHITE, J.

---

15, 2013, the probate court ruled that Baldonado is entitled to a fee award under Evidence Code section 730 upon the completion of the appeal.  As that statute authorizes the court that has appointed an expert to set the expert's fees, we decline to do so.