[No. B186946. Second Dist., Div. Seven. Apr. 25, 2007.]

In re the Marriage of MICHELLE and LOUIS L. LAURENTI.
MICHELLE LAURENTI, Appellant, v.
LOUIS L. LAURENTI, Respondent.

## COUNSEL

Linda N. Wisotsky for Appellant.

No appearance for Respondent.

## OPINION

**JOHNSON, Acting P. J.**—Michelle Laurenti appeals from an order requiring her to pay all fees billed by a court-appointed evaluator who was disqualified

from further service in this family law matter on Michelle's[1] successful motion. Michelle contends the evaluator should receive no compensation because he violated court rules by making improper ex parte communications, and he was removed from the matter by the court before he completed his evaluation and made a recommendation. Michelle also contends the trial court erred in failing to determine a reasonable fee for the evaluator's services and, instead, ordering Michelle to pay whatever amount the evaluator charged. We agree with the latter contention. Accordingly, we reverse the order and remand the matter for the trial court to hold a hearing to determine a reasonable fee, if any, to be paid for the evaluator's services and the proper allocation of that fee among the parties.

## FACTS AND PROCEEDINGS BELOW

In April 2003, Michelle and Louis L. Laurenti were divorced. In July 2005, they asked the trial court to resolve an ongoing dispute regarding where their two children should attend school—in the school district where Michelle's residence was located, or in the school district where Louis's residence was located. At a hearing on July 12, 2005, the trial court asked the parties to select an evaluator "to perform a focused evaluation" concerning where the children should attend school during the 2005/2006 school year. The court informed the parties it needed the evaluator's recommendation before August 22, 2005. The court also told the parties the evaluator's retainer fee should be paid from an account holding the proceeds from the sale of the family home and should be borne by the parties equally.

During a status conference held on July 19, 2005, the parties provided the trial court with names of proposed evaluators. Pursuant to Evidence Code section 730, the trial court appointed Kim Shirin, MFT, Ph.D., to conduct the focused evaluation concerning school placement for the children. The court ordered the parties to "cooperate with Dr. Shirin promptly and completely and . . . make themselves and the children available as requested."

On July 20, 2005, Louis's counsel sent a letter to Dr. Shirin enclosing copies of certain documents the trial court had ordered Louis to send to the evaluator (a prior custody evaluation and the judgment regarding custody and visitation). The letter concluded: "Please let me know how I can assist your office in coordinating meetings, or any other tasks that you have been requested to perform on relatively short notice."

---

[1] To avoid confusion when referring to parties who have the same surname, we will use the parties' first names as Michelle did in her appellate brief.

During the latter part of July 2005, Michelle's counsel's mother was hospitalized and her aunt passed away. Michelle's counsel informed Louis's counsel about her family emergencies. On August 2, 2005, Michelle's counsel asked Louis's counsel if he had spoken with Dr. Shirin. Louis's counsel said he had called Dr. Shirin only to inquire about the evaluator's availability and fees. Louis's counsel represented Dr. Shirin's fees would be no more than $2,500.

On August 5, 2005, Dr. Shirin called Michelle's counsel. According to counsel and Dr. Shirin, the purpose of his call was to inquire why neither Michelle nor her counsel had called his office to schedule an appointment for Michelle to be interviewed with her older child. According to counsel, Dr. Shirin's "interrogat[ion]"—including his comment a phone call would have shown her client cared about her child—made counsel feel she was being " 'attacked.' " Michelle's counsel told Dr. Shirin it was her understanding, based on her years of experience with evaluators, that Dr. Shirin would send her his stipulation or engagement agreement to review before any scheduling or interviews would take place. Dr. Shirin claimed Michelle's counsel had attacked him and attempted to instruct him on how to do his job. Michelle's counsel told Dr. Shirin it appeared he was biased against her and/or her client. Dr. Shirin denied this assertion.

During the August 5 phone call, Dr. Shirin scheduled an interview with Michelle and her older child for August 10. Dr. Shirin also informed her he had met with Louis and the child the day before, on August 4. Michelle's counsel told Dr. Shirin the children had been staying with Louis since July 31, 2005, and would be with him until August 14, 2005. Counsel asked Dr. Shirin to send her a letter stating when Michelle could pick up her children before the interview.

After the phone call, Michelle's counsel sent Dr. Shirin a letter confirming the date and time of the interview. Counsel stated she had not yet received a letter from Dr. Shirin setting forth the date and time Michelle could pick up her children from Louis's custody. Counsel proposed Michelle be permitted to "have physical custody of the children commencing Sunday, August 7, 2005 at 6:00 p.m." and ending August 10 after the interview. Counsel stated "the parties must respect your decisions regarding the meeting times with you, and the additional time to the other parent in order to protect against any undue influence and any bias that could result therefrom. The goal is to assure that each parent meets with you with the children on a level playing field."

Also after the phone call, Michelle's counsel received a faxed copy of Dr. Shirin's proposed stipulation for the evaluation. Louis had signed the stipulation the day before. According to the proposed stipulation, the "purpose of the evaluation shall be for making non-binding findings and recommendations to the Court." The stipulation did not state this was to be a focused evaluation concerning only the issue of school placement for the children. According to the proposed stipulation, the parties were required to pay Dr. Shirin an initial fee of $3,000 and any additional fees billed at a rate of $300 per hour. Based on her prior conversation with Louis's counsel, Michelle's counsel understood the total fee would be no more than $2,500. Consistent with counsel's expectations, however, the stipulation stated: "The parties are ordered to cooperate with **DR. SHIRIN** in deviating from their existing custody-visitation plan so as to permit the child(ren) to spend periods of time in the care of each parent prior to an evaluation session in the company of that parent, if **DR. SHIRIN** so requests."

At 6:30 p.m. on August 5, 2005 (which was a Friday), Dr. Shirin sent Michelle's counsel a letter, which he also forwarded to the trial court, concerning the status of the evaluation process. Dr. Shirin understood he was to conduct a focused evaluation regarding school placement for the older child only, even though the trial court had ordered an evaluation with respect to both children. Dr. Shirin informed the parties he would not be able to complete his evaluation unless he received the $3,000 retainer fee prior to Michelle's interview on August 10. Dr. Shirin then proceeded to give his account of the telephone call with Michelle's counsel which occurred earlier that day.[2] He confirmed he called her to find out why neither she nor Michelle had contacted him to schedule an interview with Michelle and her older child.

In his August 5 letter, Dr. Shirin also stated: "In the process of writing this letter, I received a fax from [Michelle's counsel] requesting me to alter the current custody visitation order. My sole role and purpose, as stated above, is to submit a report regarding school placement of the [older child]. If there is an issue regarding visitation it needs to be remedied through both of you, as the attorneys. However, if I am unable to see [the older child] on the date specified, I will be unable to submit the report as requested. [¶] In order to eliminate any further possible verbal confrontations and/or accusations, I am advising all further communications with [Michelle's counsel] to take place with both attorneys . . . in a conference call manner."

[2] In discussing the telephone call above, we set forth Dr. Shirin's point of view as described in his letter.

On Monday, August 8, 2005, Michelle's counsel responded to Dr. Shirin's letter and asked him to recuse himself from the matter for the following reasons: (1) in calling her and asking why neither she nor Michelle had contacted him, he made an improper ex parte communication in violation of local court rules;[3] (2) he did not provide her with his stipulation in a timely manner—before he had Louis sign it and participate in an interview—so she could "protect [Michelle's] interests"; and (3) he failed to protect against bias in refusing to implement a provision of his own proposed stipulation to allow Michelle to have the children for a period of time before her scheduled August 10 interview with her child.[4] Michelle's counsel asked Dr. Shirin to respond to her letter by 10:00 a.m. on August 9.

On August 9, 2005, having not heard back from Dr. Shirin as to whether or not he would recuse himself, Michelle's counsel gave Louis's counsel notice that Michelle planned to file an ex parte application the following day seeking an order removing Dr. Shirin as the evaluator, excusing Michelle from having to appear before him for the interview and vacating the order to pay Dr. Shirin.

Also on August 9, 2005, Louis's counsel faxed to Michelle's counsel a copy of a letter from Louis stating Michelle could have custody of their older son "late tonight [August 9] or sometime prior" to the August 10 interview with Dr. Shirin.

On August 10, 2005, Michelle filed ex parte papers seeking the relief outlined in her ex parte notice, as described above. Louis's counsel filed a responsive declaration in which he urged the trial court to sanction Michelle for wasting time and money and attempting to delay the process so the children would be forced to remain in the school district where Michelle's residence was located by default (because the school year would commence before the evaluation was completed and the trial court had an opportunity to rule).

---

[3] Superior Court of Los Angeles County, Local Rules, former rule 14.21(d), which was in effect at the time the trial court decided this matter, provided, in pertinent part: "Absent a stipulation to the contrary, there shall be no *ex parte* communication between the attorneys for either party or minor's counsel and a private court appointed evaluator or between the evaluator and the court, except with regard to the scheduling of appointments." The current version of rule 14.21 does not include this provision. Family Code section 216, subdivision (a), however, which became effective January 1, 2006, includes this same prohibition on ex parte communications not directed toward the scheduling of appointments.

[4] California Rules of Court, rule 5.220(h) provides, in pertinent part, "[i]n performing an evaluation, the child custody evaluator must: [¶] (1) Maintain objectivity, provide and gather balanced information for both parties, and control for bias." In addition, California Rules of Court, rule 5.220(e)(2) requires the evaluator to use procedures which "allow the evaluator to observe and consider each party in comparable ways."

The trial court held a hearing on Michelle's ex parte application. The court acknowledged Dr. Shirin was mistaken in his belief the evaluation only pertained to the older child and not both children, but stated, "Okay. We can fix that." After Michelle's counsel gave her account of her dealings with Dr. Shirin, the trial court explained it was "disturbed" by the fact she waited until Monday, August 8, 2005, to write her letter asking Dr. Shirin to recuse himself when the communications at issue occurred Friday, August 5, 2005. The court expressed "concern that there is an effort here to sabotage an evaluation." The court was "troubl[ed]" by the "fact that 20 days went by before there was any conversation with Dr. Shirin." The court commented, if Michelle's counsel "cared that much about it," she could have contacted Dr. Shirin "right away" to schedule an appointment and then sought relief from the trial court to ensure Michelle had physical custody of the children before the interview.

Notwithstanding its concerns about the manner in which Michelle's counsel handled the matter, the trial court concluded Dr. Shirin made an improper ex parte communication and needed to be removed from his appointment as evaluator: "Unfortunately, Dr. Shirin in his own [August 5, 2005] letter indicates that he contacted [Michelle's counsel] to inquire as to the reasoning that either she—[Michelle] or [her counsel] hadn't contacted him. So it appears that he did call not with the purpose simply of setting up an appointment, but saying, why haven't you called me, what is wrong with you folks?" The court found Dr. Shirin went "over the line" in his communications with Michelle's counsel. Therefore, the court granted Michelle's motion to disqualify Dr. Shirin. In lieu of the focused evaluation, the court scheduled an interview with the parties' older child to take place at the courthouse prior to the afternoon hearing on August 22, 2005.

At the August 10, 2005 hearing, the trial court ordered Michelle's counsel to "pay such an amount as Dr. Shirin may bill for the time he expended on this. Because he had every right and expectation to believe that he was appointed by the court. And he spent time—and she needs to pay his bill." The court's minute order states Michelle's "counsel is ordered to pay all fees and costs incurred to date by Dr. Shirin from the trust account." The court reserved jurisdiction "as to attorney fees and allocation of costs." Later that day, Michelle received Dr. Shirin's bill for his services in the amount of $2,400.

In ruling on the school placement issue, the trial court prepared an August 23, 2005 notice of ruling which states, in pertinent part: "The Court reserved its jurisdiction over the issue of fees and costs for the evaluation that did not occur with Dr. Shirin and the hearing on his disqualification. All of the fees

and costs of Dr. Shirin shall be paid from the trust account and shall be borne completely by [Michelle]. [Louis] may file any request he has for fees in a noticed motion."

On September 7, 2005, Michelle filed a motion to vacate the trial court's orders concerning payment of Dr. Shirin's fees. Michelle requested the trial court hold an evidentiary hearing regarding (1) "the factual and legal basis for awarding Dr. Kim Shirin fees and, if fees are awarded, the reasonable amount of said fees" and (2) "the basis for ordering [Michelle] to be solely responsible for fees charged by Dr. Kim Shirin." Michelle asserted the trial court "effectively sanctioned" her for having to disqualify Dr. Shirin and "did it without notice and an opportunity to be heard." Michelle also argued the court "effectively excused" Dr. Shirin from compliance with court rules. Michelle also noted the trial court ordered her to pay all of Dr. Shirin's fees and costs without knowing what he charged ($2,400) "or that $900 of the charges were incurred after he made the inappropriate exparte [*sic*] communication which resulted in his disqualification."

On October 18, 2005, the trial court held a hearing on Michelle's motion to vacate the orders concerning payment of Dr. Shirin's fees. Louis did not appear. Michelle's counsel questioned why the court believed it was Michelle's responsibility to get Dr. Shirin "to do his job" and to ensure he did not violate court rules. The court denied the motion to vacate, stating it was Michelle's "obligation to pay [Dr. Shirin's] fees to the extent they're relevant." In its minute order, the court stated: "[Michelle] is admonished to address her concerns regarding any amount owing Dr. Shirin to him."

Michelle appealed from the August 23, 2005 order requiring her to pay Dr. Shirin's fees and costs and the October 18, 2005 order denying her motion to vacate that order.

## DISCUSSION

Michelle contends the trial court erred in awarding fees to Dr. Shirin because he was disqualified from further service in the matter based on his violation of court rules. She also contends the trial court erred in refusing to set the amount of fees to be paid and, instead, ordering her to pay whatever amount Dr. Shirin charged.[5] We begin our discussion with the trial court's

---

[5] Louis did not file a respondent's brief. Therefore, we decide this appeal based on the record, the opening brief and any oral argument by Michelle. (Cal. Rules of Court, rule 8.220(a)(2).)

failure to determine a reasonable compensation for Dr. Shirin's services. We find this abdication of the trial court's duty requires us to reverse the order and remand the matter for a new hearing at which Michelle's other contentions can and should be addressed.

■ The trial court appointed Dr. Shirin pursuant to Evidence Code section 730. This statute states, in pertinent part: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required. [¶] *The court may fix the compensation for these services, if any, rendered by any person appointed under this section, in addition to any service as a witness, at the amount as seems reasonable to the court.*"[6] California Rules of Court, rule 5.220 makes clear it is the trial court's duty to "[d]etermine and allocate between the parties any fees or costs of the evaluation."[7]

When read together, we interpret Evidence Code section 730 and California Rules of Court, rule 5.220 to mean a trial court must (1) decide whether an evaluator should receive any compensation for his or her services, (2) determine a reasonable amount of compensation and (3) state which party or parties will bear what portion of the fees and costs.[8] Here, the trial court did (1) and (3)—whether rightly or wrongly—but failed to do (2).

Without even reviewing Dr. Shirin's bill, the trial court ordered Michelle to pay "[a]ll of the fees and costs of Dr. Shirin." When Michelle brought her motion to vacate and protested specific charges on Dr. Shirin's bill, the trial court told her to take her complaints to Dr. Shirin and pay his fees "to the extent they're relevant." This approach certainly does not comply with California Rules of Court, rule 5.220(d)(1)(D), which requires the trial court to "[d]etermine . . . any fees or costs of the evaluation." Here, the trial court did not determine, decide or resolve the issue. Instead, the trial court shirked its duty and instructed Michelle to go work it out with Dr. Shirin. In order to

---

[6] Evidence Code section 730, italics added.

[7] California Rules of Court, rule 5.220(d)(1)(D).

[8] Michelle has not cited any case law interpreting either Evidence Code section 730 or California Rules of Court, rule 5.220 as it relates to the determination of an evaluator's fees. We have not found any relevant case law on this issue either.

determine reasonable compensation, the court must at least review the evaluator's bill and give some consideration to the value of the services provided.[9] Not only did the court fail to determine a reasonable compensation for the services provided,[10] but the court failed to even determine a specific amount Michelle was obligated to pay.

■ Because the trial court did not determine a reasonable fee for Dr. Shirin's services, we reverse the order requiring Michelle to pay Dr. Shirin's fees and costs and remand the matter for the trial court to hold a new hearing. In determining a reasonable fee for Dr. Shirin's services, the trial court should address Michelle's claims Dr. Shirin is not entitled to any compensation at all due to his violation of court rules and Michelle should not be solely responsible for paying the fees and costs.[11] For example, the court should evaluate whether Michelle's counsel's conduct in waiting to schedule an interview until after the evaluator provided his stipulation or engagement agreement was reasonable in light of Superior Court of Los Angeles County, Local Rules, rule 14.21(e)(2)(c), which requires an evaluator to provide the parties with a letter describing the procedures "[u]pon appointment to perform an evaluation."[12] The trial court ordered the parties to "cooperate with Dr. Shirin promptly and completely and . . . make themselves and the children available as requested." The trial court did not specifically order the parties to initiate contact with Dr. Shirin for purposes of scheduling appointments. The court's order seems to indicate it was appropriate for the parties to follow Dr. Shirin's lead.

The trial court should allow the parties to brief all of these issues and submit evidence in advance of the new hearing.[13]

---

[9] In fashioning a reasonable attorney fee award, for example, a trial court determines the value of the services the attorney rendered for which the party seeks compensation. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095, 1096 [95 Cal.Rptr.2d 198, 997 P.2d 511].)

[10] See Evidence Code section 730.

[11] We note, when a trial court sanctions a party in a family law matter and orders that party to pay the other side's attorney fees and costs, the court must provide notice and an opportunity to be heard and take into consideration the party's ability to pay. (Fam. Code, § 271.)

[12] See also *In re Marriage of Seagondollar* (2006) 139 Cal.App.4th 1116, 1133 [43 Cal.Rptr.3d 575] (pursuant to Cal. Rules of Court, rule 5.220(e)(1)(A), the evaluator had an obligation to supply to the parties "a written protocol describing the purpose of the evaluation and explaining the procedures he intended to follow").

[13] Because we reverse the order requiring Michelle to pay Dr. Shirin's fees and costs, we need not address the merits of her motion to vacate that order. Therefore, we dismiss as moot Michelle's appeal from the order denying her motion to vacate.

## DISPOSITION

The August 23, 2005 order requiring appellant to pay all fees and costs billed by Dr. Shirin is reversed, and the cause is remanded for the trial court to hold a hearing to determine a reasonable compensation for Dr. Shirin's services, if any, and the proper allocation of those fees and costs among the parties. In all other respects, the August 23, 2005 order is affirmed. The appeal from the October 18, 2005 order denying appellant's motion to vacate the orders concerning payment of Dr. Shirin's fees and costs is dismissed as moot. Appellant is entitled to recover her costs on appeal.

Woods, J., and Zelon, J., concurred.