Filed 6/12/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of PAUL and REBECCA BENNER. | |
| | D073758 |
| PAUL BENNER, | |
| Respondent, | (Super. Ct. No. DN154392) |
| v. | |
| REBECCA TAM, | |
| Respondent; | |
| JOHN KACHOREK, | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Pamela M. Parker and Kelly C. Mok, Judges. Affirmed with directions.

Worthington Law and Brian P. Worthington for Appellant.

Carl M. Hancock for Respondent Rebecca Tam.

No appearance for Respondent Paul Benner.

# I.

## INTRODUCTION

At the direction of the trial court, respondent Rebecca Tam (Rebecca)[1] filed a petition seeking to join appellant Dr. John Kachorek as a party to the marital dissolution proceeding between her and her former husband, Paul Benner. In her petition, Rebecca outlined the unusual procedural history of this case that led to her filing the petition for joinder. The trial court dissolved Rebecca and Paul's marriage in June 2010. In May 2011, Paul filed a postjudgment motion seeking modification of child custody. In June 2013, the trial court appointed Dr. Kachorek, pursuant to Evidence Code section 730,[2] to conduct a child custody evaluation. Dr. Kachorek issued a child custody evaluation report in 2014.

In 2016, the trial court determined that Dr. Kachorek's report was deficient in a number of respects and that the report was thus of no value in assisting the court in determining what would be the appropriate child custody arrangement. The court ordered Dr. Kachorek to repay Rebecca and Paul all of the expert fees that they had paid him pursuant to his appointment.

---

[1]     We refer to Rebecca and her former husband, respondent Paul Benner (Paul), by their first names for purposes of clarity and intend no disrespect. Paul has not filed a brief in this court.

[2]     Evidence Code section 730 authorizes a trial court to appoint an expert for the purpose of providing expert evidence to the court and authorizes a court to "fix the compensation for these services . . . ."

In March 2017, the trial court set aside the repayment order and joined Dr. Kachorek, sua sponte, as a party to the action for the purpose of determining whether to order him to repay the fees. The trial court subsequently granted Dr. Kachorek's motion to quash the sua sponte joinder order and ordered Rebecca to file a formal petition to join Dr. Kachorek in the action.[3]

In August 2017, Rebecca filed a petition seeking to join Dr. Kachorek in the action. In her petition, Rebecca requested that the trial court determine whether to order Dr. Kachorek to repay the expert fees that Kachorek had been paid in connection with his appointment pursuant to Evidence Code section 730 to prepare a child custody evaluation.

Dr. Kachorek filed a special motion to strike the petition pursuant to the anti-SLAPP statute. (Code Civ. Proc., § 425.16.)[4] Dr. Kachorek argued that "the claims asserted in the petition arise from protected activity" (boldface & capitalization omitted) under the anti-SLAPP statute, namely, his providing a child custody evaluation to the court. Rebecca filed an opposition in which she argued that her petition "does not even contain a cause of action." Rebecca further argued that the petition sought merely to provide Dr. Kachorek with notice of a hearing regarding his fees under Evidence Code

---

[3]     This portion of the procedural history of the case was not specifically mentioned in Rebecca's petition.

[4]     "SLAPP" stands for Strategic Lawsuit Against Public Participation. (See *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)
        Unless otherwise specified, all subsequent statutory references are to the Code of Civil Procedure.

section 730, as directed by the trial court. The trial court denied Dr. Kachorek's anti-SLAPP motion, concluding that the petition did not state a cause of action arising from protected activity, but rather, merely joined Dr. Kachorek to the action for the purpose of "establishing the reasonableness of his fees."

We conclude that the trial court properly denied Dr. Kachorek's motion. Rebecca's petition to join Dr. Kachorek in the action does not assert *any* cause of action on behalf of Rebecca against Dr. Kachorek, a threshold requirement under the anti-SLAPP statute. (See § 425.16, subd. (b)(1) ["A *cause of action* . . . shall be subject to a special motion to strike . . . ." (italics added)].) Rather, the petition seeks merely to provide notice to Dr. Kachorek that the trial court would be issuing an order pertaining to, as the petition states, "the funds received by him in his role as an Evidence Code [section] 730 [expert]." Accordingly, we affirm the trial court's order denying Dr. Kachorek's special motion to strike.

However, Dr. Kachorek did not have to be joined as a party to the dissolution action in order for the court to determine the reasonableness of his expert fees—including whether to order him to repay fees already received—and it was error for the court to require that he be joined in the action. In part III.B, *post*, we outline the proper procedural manner by which the trial court shall determine this issue on remand.[5]

---

5    As we also explain in part III.B, *post*, we express no opinion with respect to whether it would be proper for the trial court to order repayment.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Dr. Kachorek's appointment and child custody report*

The trial court entered a judgment dissolving Rebecca and Paul's marriage in 2010. In May 2013, Rebecca requested that the court appoint an expert pursuant to Evidence Code section 730 to conduct a child custody evaluation. The trial court appointed Dr. Kachorek to conduct the evaluation in August 2013. Dr. Kachorek issued a written report in August 2014 in which he recommended that Paul be awarded sole legal and physical custody of Rebecca and Paul's two children.

B. *Proceedings related to Dr. Kachorek's report and Rebecca's request for an order directing Dr. Kachorek to repay expert fees*

In October 2014, Rebecca filed a request for an order seeking exclusion of Dr. Kachorek's report from evidence in the child custody proceedings. In her request, Rebecca maintained that Dr. Kachorek had failed to follow the requirements of his appointment order and that he was biased against her.

In January 2016, Judge Pamela Parker issued an order excluding Dr. Kachorek's report from evidence. Judge Parker found that the "procedural deficiencies of Dr. Kachorek's report are substantial and pervasive," and that "there is substantial evidence of actual bias."[6] In her order, Judge Parker stated, " Neither party has asked the court to

---

6      Judge Parker summarized her findings as follows:

> "Dr. Kachorek failed to meet the standards set by the California rules and this Court's Appointment Order in critical respects:  1) He performed his evaluation utilizing his own protocols that were never

assess the reasonableness of Dr. Kachorek's fees, which this Court is empowered to do. [Citation.]  The Court reserves jurisdiction to determine the reasonableness of those fees, or lack thereof, upon the filing of a properly noticed motion."

In August 2016, Judge Parker issued an order stating the following:

> "The Court finds that the report issued by Dr. Kachorek dated August 1, 2014, has no value.  The Court finds that $0 is a reasonable fee for the evaluation.  The Court orders a full refund for all monies paid to Dr. Kachorek by the parties, including but not limited to fees for Dr. Kachorek to testify."[7]

C. *Judge Mok sets aside the repayment order, issues an order sua sponte joining Dr. Kachorek as a party, but later quashes the joinder order and directs Rebecca to file a petition for joinder*

Dr. Kachorek filed a request that the repayment order be set aside.[8]  In December 2016, Judge Parker commenced a hearing on the request.  At the outset of the hearing, upon learning that Paul had not been served with Kachorek's request to set aside the

---

> fully disclosed to the parties or their counsel, or authorized by the Court; 2) Although it was within his capabilities to do so, and indeed, part of his obligation, he did not take reasonable steps to ensure compliance with the directives of the Appointment Order, and as a result, failed to gather information about the parties in a balanced and fair manner; 3) He failed to obtain relevant information from professionals regarding the parties and their children that may have countered some of the negative information about Rebecca that Dr. Kachorek focused on in his report; and 4) He failed to control for bias and maintain objectivity in weighing the information he received and in making his findings and recommendations."

[7]    Although not contained in the record, Rebecca states in her brief on appeal that she filed a request for order on March 1, 2016 in which she asked the trial court to "determine the reasonableness of [Dr. Kachorek's] fees."

[8]    The request is not contained in the record.

repayment order, Judge Parker continued the hearing to ensure that Paul be served. However, Judge Parker provided Rebecca and Dr. Kachorek with the following tentative ruling:

> "The tentative would be to set aside that portion of the order that finds that Dr. Kachorek is entitled to zero and orders a refund of everything paid to him. I would then set this for a hearing, at which Dr. Kachorek could participate, for the purpose of determining whether, notwithstanding the finding that his report had zero value from an evaluative standpoint regarding the custody issues, he may be entitled to some compensation."

In March 2017, Judge Kelly Mok[9] held a hearing on Dr. Kachorek's request to set aside the repayment order. At the hearing, Judge Mok stated that Dr. Kachorek had "not had a hearing on the issue of the reasonableness of his fees." Judge Mok indicated that she would hold a hearing on the reasonableness of Dr. Kachorek's fees and that Dr. Kachorek would be provided with notice of the hearing and an opportunity to be heard. Judge Mok explained, "We're having a do-over because [Dr. Kachorek] wasn't present at the hearing when it was determined what . . . he's entitled to in terms of compensation."

After Judge Mok explained the purpose of the proceeding, Dr. Kachorek's counsel asked, "[W]hat is the jurisdictional document that brings Dr. Kachorek before this court?"

Judge Mok replied:

> "On the Court's motion, I'm joining Dr. Kachorek as a party to this action — as an indispensable party to this action for a future hearing in determining what the reasonableness of his fees are.

---

9       Judge Mok was assigned to the family law department that Judge Parker had previously occupied.

7

"Under Evidence Code [section] 730, Dr. Kachorek was appointed — by stipulation from the parties to be a custody evaluator on this case. [¶] Under [Evidence Code section] 730, the Court does have authority to fix the compensation for those services and to determine the reasonableness of his fees. Dr. Kachorek will be joined as a party."

Dr. Kachorek's counsel stated that he wanted to preserve his objection to the trial court "taking the liberty to join a party to a lawsuit without any jurisdictional document being served upon him."

After the hearing, Dr. Kachorek filed a motion to quash Judge Mok's order joining him as a party to the case.[10] Judge Mok granted the motion to quash and ordered Rebecca to serve a formal summons and petition for joinder on Dr. Kachorek.[11] In making this ruling, Judge Mok stated:

"The court previously ruled or ordered that the Court has the authority to set the reasonable compensation of Dr. Kachorek's fees, that's under Evidence Code [section] 730. I don't find that Evidence Code [section] 730[ ] is inconsistent with the Court's authority to set the reasonableness of his fees.

"This Court did previously join Dr. Kachorek as an indispensable party. He's not a party to all of the issues at hand. It's just the issue as to what the reasonableness of his fees were.

"I think that it comes down to the technical aspect of what Dr. Kachorek brings up, which is that he wasn't served with the summons and petition. And so what I will do is I will order that he

---

[10]    The motion to quash also is not contained in the record.

[11]    It is not entirely clear from the record the date on which Judge Mok issued this order. The record contains a single page of the reporter's transcript of the hearing at which Judge Mok issued the order. In addition, although it is not clear from this single page of reporter's transcript, in denying Dr. Kachorek's anti-SLAPP motion, Judge Mok indicated that she had directed Rebecca, rather than Paul, to file the petition for joinder.

8

be served with the summons and petition, so that he does have due process."

D.  *Rebecca's petition*

In August 2017, Rebecca filed her petition for joinder, seeking to join Kachorek as a party to the action.  In the petition, Rebecca contended that the court had jurisdiction over Dr. Kachorek because "Evidence Code [section] 730 gives this court the authority to fix the compensation of Dr. Kachorek's fees and to determine the reasonableness of his fees."

Rebecca outlined the procedural history of the case, noting Judge Parker's May 2016 order directing Dr. Kachorek to "repay all fees," and Judge Mok's March 2017 order setting aside "the order of repayment as Dr. Kachorek was not present."

Rebecca further argued that Dr. Kachorek was an indispensable party to the action under section 389, subdivision (a).[12]  After noting that Judge Mok had determined at the March 21, 2017 hearing that Dr. Kachorek was an indispensable party for the purpose of

_____

[12]  Rebecca's petition contained a typographical error, referring to section 339, subdivision (a) rather than to section 389, subdivision (a).  However, the petition quoted section 389, subdivision (a), which provides:

> "(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.  If he has not been so joined, the court shall order that he be made a party."

determining the reasonableness of his fees under Evidence Code section 730, Rebecca

argued:

> "Section [389, subdivision] (a) requires the compulsory joinder of Dr. Kachorek.  Dr. Kachorek claims an interest relating to the subject of the action, the funds received by him in his role as an Evidence Code [section] 730 [expert].  Dr. Kachorek's absence from the proceeding impede[s] his ability to protect his interest in these funds[,] which is why the court granted Dr. Kachorek's request to set aside the order that he repay the fees and set a hearing to allow his participation.  Dr. Kachorek had not been joined and therefore, the court was required by the language of [section 389, subdivision] (a), specifically the use of the words 'shall be joined as a party', to make Dr. Kachorek a party."[13]

Finally, in a section of the petition entitled "Request for Relief," (some

capitalization omitted) Rebecca argued, "[I]t is clear that Dr. Kachorek is a necessary and

indispensable party as he is in control and possession of the fees paid to him by

[Rebecca], for which she seeks repayment thereof."

E.  *Proceedings on Dr. Kachorek's special motion to strike*

   1.  *Dr. Kachorek's special motion to strike*

After the trial court granted Rebecca's petition for joinder,[14] Dr. Kachorek filed a

special motion to strike Rebecca's petition pursuant to the anti-SLAPP statute.  In his

motion, Dr. Kachorek argued that Rebecca's petition "fail[ed] to identify the specific

claims asserted against Dr. Kachorek," but contended that Rebecca appeared to be

---

13    Rebecca also contended that California Rules of Court, rule 5.24, authorized joinder in a family law case.

14    Although the order joining Dr. Kachorek as a party to the case is not in the record, the trial court's order denying Dr. Kachorek's anti-SLAPP motion indicates that the court joined him as a party to the case on September 11, 2017.

10

asserting "breach of contract claims for the return of professional fees paid to Dr. Kachorek for services performed as [a] privately retained custody evaluator."[15] Dr. Kachorek further argued that these claims arose from his services in providing a custody evaluation to the court, which constituted "protected activity" under the statute. Dr. Kachorek also maintained that Rebecca would not be able to prove the validity of her claims.

2. *Rebecca's opposition*

Rebecca filed an opposition to the special motion to strike. Among other arguments, Rebecca contended that the petition did not contain a cause of action of any kind and that it was merely a "glorified Notice of Hearing repackaged to accommodate Dr. Kachorek's demand for formal joinder."[16] Rebecca argued in relevant part:

> "The litigation activity at issue here is not subject to the Anti-SLAPP procedure, as not even the threshold requirement is met: The Petition Dr. Kachorek seeks to strike is not, and does not contain, a *cause of action.* As evidenced first in the text, there is no cause of action identified in the body or caption of the Petition at all.
>
> "[¶] . . . [¶]
>
> "It is unsurprising that the Petition for Joinder doesn't identify a 'cause of action,' when one considers what the Petition really is, at its crux. The Petition is a *Notice*, affording an interested third party an

---

15    We discuss in part III.A.2, *post*, Dr. Kachorek's statement that he was "privately retained."

16    It appears that Rebecca was referring to the fact that Dr. Kachorek's counsel objected to the court joining him to the action without the filing of a formal petition for joinder. (See pt. II.C, *ante*.) In directing Rebecca to file the petition, the trial court stated, "I think that it comes down to the technical aspect of what Dr. Kachorek brings up, which is that he wasn't served with the summons and petition."

11

opportunity to participate in a certain hearing. The fact that the *Notice of Hearing* is packaged as a "Petition" in this instance does not transform it into something that can be stricken, as the form of litigation-related conduct is not dispositive regarding whether the Anti-SLAPP statute applies."

Rebecca also argued that there was a high likelihood that her petition for joinder "will succeed, no matter whether success is defined as joining Dr. Kachorek to the case or obtaining an order to refund money."[17]

3. *The trial court's ruling on the special motion to strike*

In December 2017, after further briefing and a hearing, the trial court denied Dr. Kachorek's special motion to strike. In a written order, the trial court determined that Dr. Kachorek had failed to demonstrate that Rebecca's petition stated a cause of action against him based on protected activity. The court explained that Rebecca's petition sought a " 'hearing to determine what the reasonableness of [Dr. Kachorek's] fees are, which the Court has authority to do under Evidence Code Section 730.' "[18] The court

---

[17]    Rebecca supported her opposition with, among other documents, her declaration detailing the procedural history of this case as well as copies of some of the court's prior rulings and reporter's transcripts.

[18]    At the hearing on the special motion to strike, the court explained its reasoning for denying the motion, in part, as follows:

> "Dr. Kachorek was joined for the purpose of establishing the reasonableness of his fees. Dr. Kachorek acknowledges that the Court does have authority and obligation to determine the reasonable compensation for the custody evaluation, and this can be done at the hearing.
>
> "This court determines that the — opines that Dr. Kachorek has not made a threshold showing that the action is a protective activity [*sic*] as this court is setting this hearing to determine what the

12

further ruled that, even assuming that Dr. Kachorek had carried his burden in demonstrating that Rebecca's petition stated a cause of action based on protected activity, there was a probability that Rebecca would prevail on her request that the court determine the reasonableness of Dr. Kachorek's fees.

F.  *Dr. Kachorek's appeal*

Dr. Kachorek filed an appeal from the trial court's order denying his special motion to strike.[19]

III.

DISCUSSION

A.  *The trial court properly denied Dr. Kachorek's anti-SLAPP motion because Rebecca's petition for joinder does not contain a cause of action against Dr. Kachorek*

Dr. Kachorek claims that the trial court erred in denying his anti-SLAPP motion. We review the trial court's order on an anti-SLAPP motion de novo.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819–820.)

1.  *Governing law*

a.  *Overview of the anti-SLAPP statute*

Section 425.16 provides for a 'special motion to strike' when a plaintiff brings a claim against a person "arising from any act of that person in furtherance of the person's

---

reasonableness of his fees are, which the Court has authority to do under Evidence Code Section 730."

[19]  The order is appealable.  (§ 425.16, subd. (i) ["An order granting or denying a special motion to strike shall be appealable under Section 904.1"].)

right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  (§ 425.16, subd. (b)(1).)

Section 425.16, subdivision (b) provides in relevant part:

> "(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.
>
> "(2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."

"Resolution of an anti-SLAPP motion involves two steps.  First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.]  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

> b. *A "cause of action" (§ 425.16, subd. (b)(1)) under the anti-SLAPP statute*

In *Baral*, the California Supreme Court outlined the meaning of a "cause of action" (§ 425.16, subd. (b)(1)) under the anti-SLAPP statute:

> "The scope of the term 'cause of action' in section 425.16[, subdivision] (b)(1) is evident from its statutory context.  When the Legislature declared that a 'cause of action' arising from activity furthering the rights of petition or free speech may be stricken unless the plaintiff establishes a probability of prevailing, it had in mind *allegations of protected activity that are asserted as grounds for relief.*  The targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy. . . .  (§ 425.16[, subd. ](b)(1), italics added.)"  (*Baral*, *supra*, 1 Cal.5th at p. 395.)

14

The California Supreme Court has also made it clear that, in order to prevail on a special motion to strike, the defendant must demonstrate that the " '*plaintiff* claims to have been injured' " by the defendant's conduct that is protected by the statute. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063, some italics omitted; accord *Old Republic Construction Program Group v. The Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 869 ["a cause of action can only be said to arise from protected conduct if it alleges at least one wrongful act—conduct allegedly *breaching a duty and thereby injuring the plaintiff* —that falls within the act's definition of protected conduct" (some italics omitted)].)

Finally, as the plain language of the state indicates, "Section 425.16 is . . . explicitly directed at the striking of 'a cause of action.' " (*Tendler v. www.jewishsurvivors.blogspot.com* (2008) 164 Cal.App.4th 802, 808 (*Tendler*), quoting § 425.16, subdivision (b)(1) ["A *cause of action* . . . shall be subject to a special motion to strike . . . " (italics added)].) Thus, a special motion to strike (§ 425.16, subd. (b)(1)) may *not* be brought to attack pleadings that do not contain a cause of action. (See *Tendler*, *supra*, at p. 809 [concluding that section 425.16 may not be used to strike a request for a subpoena]; *Sheppard v. Lightpost Museum Fund* (2006) 146 Cal.App.4th 315, 324 [special motion to strike may not be used to target claim asserted in arbitration].)

c. *Relevant substantive law*

Rebecca's petition alleged that Dr. Kachorek was appointed pursuant to Evidence Code section 730 to conduct a child custody evaluation.[20] Evidence Code section 730 provides in relevant part:

> "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required. *The court may fix the compensation for these services, if any, rendered by any person appointed under this section, in addition to any service as a witness, at the amount as seems reasonable to the court.*" (Italics added.)

Evidence Code section 731, subdivision (c) provides in relevant part:

> "(c) . . . [T]he compensation fixed under Section 730 shall, in the first instance, be apportioned and charged to the several parties in a proportion as the court may determine and may thereafter be taxed and allowed in like manner as other costs."

California Rules of Court, rule 5.220 (Rule 5.220) governs, among other appointments, "court-connected . . . child custody evaluators appointed under . . . Evidence Code section 730 . . . ." (Rule 5.220(b).) Rule 5.220(d)(1)(D) provides that a

---

[20] Family Code section 3111 authorizes a court to "appoint a child custody evaluator to conduct a child custody evaluation." In addition, Family Code section 3112 permits a court to "make an order requiring [a] parent . . . to repay the court the amount the court determines proper" for the costs of the evaluation. However, Rebecca did not allege in her petition that Dr. Kachorek had been appointed pursuant to these provisions. In addition, Dr. Kachorek did not state in his special motion to strike that he had been appointed pursuant to these provisions. The appointment order is not contained in the record.

trial court must "[d]etermine and allocate between the parties any fees or costs of the evaluation."

In *In re Marriage of Laurenti* (2007) 154 Cal.App.4th 395 (*Laurenti*), the Court of Appeal interpreted Evidence Code section 730 and Rule 5.220(d)(1)(D). In *Laurenti*, the trial court appointed an expert pursuant to Evidence Code section 730 in a postjudgment marital dissolution proceeding for the purpose of conducting an evaluation pertaining to where the parties' two children should attend school. (*Laurenti*, *supra*, at p. 397.) The mother filed an application to remove the expert due to the expert's violation of court rules. (*Id.* at p. 400.) The trial court granted her application. (*Id.* at p. 401.) However, the court ordered the mother to pay "all of [the expert's] fees and costs." (*Id.* at pp. 401–402.)

After receiving the expert's bill, the mother sought to vacate the trial court's order directing her to pay all of the expert's fees and costs. (*Laurenti*, *supra*, 154 Cal.App.4th at pp. 401–402.) In her motion, the mother requested that the trial court hold "an evidentiary hearing regarding (1) 'the factual and legal basis for awarding [the expert] fees and, if fees are awarded, the reasonable amount of said fees' and (2) 'the basis for ordering [mother] to be solely responsible for fees charged by [the expert].' " (*Id.* at p. 402.) After the trial court denied the motion to vacate, the mother appealed from the trial court's orders directing her to pay the expert's fees and costs and denying the motion to vacate. (*Ibid.*)

On appeal, the mother contended that the trial court had erred in awarding *any* fees to the expert, given his disqualification. (*Laurenti*, *supra*, 154 Cal.App.4th at p. 402.)

17

The mother also claimed that the trial court had erred in refusing to set the amount of fees to be paid to the expert and in ordering her to pay whatever amount the expert charged. (*Id.* at pp. 402–403.)  The *Laurenti* court concluded that the court had erred in refusing to "determine a reasonable compensation for [the expert's] services," and that "this abdication of the trial court's duty requires us to reverse the order [requiring the mother to pay the expert's fees] and [to] remand the matter for a new hearing at which [the mother's] other contentions can and should be addressed."  (*Id.* at p. 403.)

In explaining the basis for its conclusion that the trial court had erred in failing to determine the amount of the fees, the *Laurenti* court interpreted Evidence Code section 730 and Rule 5.220 and concluded:

> "When read together, we interpret Evidence Code section 730 and . . . rule 5.220 to mean a trial court must (1) decide whether an evaluator should receive any compensation for his or her services, (2) determine a reasonable amount of compensation and (3) state which party or parties will bear what portion of the fees and costs." (*Laurenti*, *supra*, 154 Cal.App.4th at p. 403.)

The *Laurenti* court further stated that "the trial court did (1) and (3)—whether rightly or wrongly—but failed to do (2)."  (*Laurenti*, *supra*, 154 Cal.App.4th at p. 403.) The court reasoned in part:

> "Here, the trial court did not determine, decide or resolve the issue. Instead, the trial court shirked its duty and instructed [the mother] to go work it out with [the expert].  In order to determine reasonable compensation, the court must at least review the evaluator's bill and give some consideration to the value of the services provided.  Not only did the court fail to determine a reasonable compensation for the services provided, but the court failed to even determine a specific amount [the mother] was obligated to pay.

18

"Because the trial court did not determine a reasonable fee for [the expert's] services, we reverse the order requiring [the mother] to pay [the expert's] fees and costs and remand the matter for the trial court to hold a new hearing. In determining a reasonable fee for [the expert's] services, the trial court should address [the mother's] claims [that the expert] is not entitled to any compensation at all due to his violation of court rules and [mother] should not be solely responsible for paying the fees and costs." (*Id.* at pp. 403–404.)

The *Laurenti* court remanded the matter to the trial court with directions to "hold a hearing to determine a reasonable compensation for [the expert's] services, if any, and the proper allocation of those fees and costs among the parties." (*Laurenti*, *supra*, 154 Cal.App.4th at p. 405; see also *In re Marriage of Adams & Jack A.* (2012) 209 Cal.App.4th 1543, 1569 (*Adams*) [applying *Laurenti* and concluding that the "court had a duty to review [the expert's] billing statements and determine a fair compensation after an evidentiary hearing"].)

2. *Application*

Dr. Kachorek contends that Rebecca's petition states a cause of action against him for the "forced return of fees Rebecca paid to Dr. Kachorek." We are not persuaded.

On its face, Rebecca's petition does not contain *any* separately labeled causes of action against Dr. Kachorek. Instead, the petition states only that Dr. Kachorek is an indispensable party to the action because he has "an interest relat[ed] to the subject of the action, the funds received by him in his role as an Evidence Code [section] 730 [expert]." While the form of a pleading is not determinative under the anti-SLAPP statute (*Baral*, *supra*, 1 Cal.5th at p. 392), as the proponent of an anti-SLAPP motion, Dr. Kachorek bore the burden of identifying "*the claims for relief* " contained in Rebecca's petition.

19

(*Id.* at p. 396, italics added.) For the reasons explained below, Dr Kachorek cannot carry that burden in this case because Rebecca's petition does not assert *any* claims for relief against Dr. Kachorek.

To begin with, the procedural history outlined in part II.C, *ante*, unequivocally indicates that Rebecca's petition was filed solely for the purpose of providing Dr. Kachorek with notice of the trial court's intent to " 'fix the compensation for [Dr. Kachorek's] services' " under Evidence Code section 730.[21] The text of Rebecca's petition is entirely consistent with this purpose. Rebecca's petition states, "Evidence Code [section] 730 gives this court authority to fix the compensation for Dr. Kachorek's fees and to determine the reasonableness of his fees." Rebecca's petition also states:

> "Dr. Kachorek claims an interest relating to the subject of the action, the funds received by him in his role as an Evidence Code [section] 730 [expert]. Dr. Kachorek's absence from the proceeding impede his ability to protect his interest in these funds which is why the court granted Dr. Kachorek 's request to set aside the order that he repay the fees and set a hearing to allow his participation."

Critically, we are aware of no authority, and Dr. Kachorek has cited none, that supports the proposition that a party's request that the *trial court* set an *expert's* compensation under Evidence Code section 730, constitutes a *claim* by the party against

[21] By way of summary, Judge Parker issued an order in August 2016 determining that Dr. Kachorek's "Evidence Code section 730 evaluation fee" was $0 and directing him to refund all monies previously paid to him by Rebecca and Paul. (Boldface & some capitalization omitted) After setting aside Judge Parker's August 2016 order, Judge Mok stated that she would hold a hearing to "determine what the reasonableness of [Dr. Kachorek's] fees are." After joining Dr. Kachorek sua sponte as a party for the purpose of determining "the reasonableness of his fees," Judge Mok quashed that order and directed Rebecca to file a petition to join Dr. Kachorek as a party in order to determine this same issue.

20

the expert for purposes of the anti-SLAPP statute. As discussed above, in order to constitute a claim for purposes of the anti-SLAPP statute, a plaintiff's pleading must contain allegations of protected activity that are asserted as *"grounds for relief*," against a defendant. (*Baral*, *supra*, 1 Cal.5th at p. 395.) A party's request that the *court* perform "*its* duty," (*Laurenti*, *supra*, 154 Cal.App.4th at p. 403, italics added) under Evidence Code section 730 and Rule of Court 5.220 to "determine a reasonable amount of compensation," (*Laurenti*, *supra*, at p. 403) to be paid to a court appointed expert does not constitute a plaintiff's assertion of a "ground[ ] for relief" (*Baral*, *supra*, at p. 395, italics omitted) against a defendant.

The *Laurenti* court's interpretation of Evidence Code section 730 and Rule 5.220 supports this conclusion. The *Laurenti* court interpreted these provisions as requiring a trial court to both determine the reasonable amount of compensation, if any, that an expert should receive, and to apportion the charges for this compensation among the parties. (*Laurenti*, *supra*, 154 Cal.App.4th at pp. 403–404.) However, the *Laurenti* court did *not* indicate that either of the parents possessed a claim against the expert pertaining to the expert's fees, nor did the court suggest that the expert should be made a party to the case. Further, the *Laurenti* and *Adams* courts each remanded for the trial court to hold a "hearing" pertaining to the expert's compensation and the allocation of the payment of that compensation between the parties (*Laurenti*, *supra*, at p. 405; *Adams*, *supra*, 209 Cal.App.4th at p. 1570.)

The fact that Rebecca's petition indicated that she sought "repayment" from Dr. Kachorek for fees that she had paid to him does not alter our analysis. While Rebecca's

21

petition indicated that she requested repayment from Dr. Kachorek, there is nothing in the law outlined above that indicates that she could have alleged *a cause of action* against him pursuant to Evidence Code section 730 for such repayment. Rather, as we explain in part III.B, *post*, any repayment to Rebecca that the court may order on remand will be based on the court's determination of Dr. Kachorek's reasonable compensation under Evidence Code 730, and the court's apportionment of the charges for such compensation under Evidence Code section 731[22] and Rule 5.220. Such repayment will *not* be based on Rebecca's prosecution of a claim against Dr. Kachorek.

Dr. Kachorek also argues that the existence of a cause of action in Rebecca's petition is demonstrated by the fact that a joinder application " 'must be accompanied by an appropriate pleading setting forth the claim as if it were asserted in a separate action or proceeding.' " (Quoting Cal. Rules of Court, rule 5.24(d)(1).) Dr. Kachorek reasons that this requirement demonstrates that Rebecca's petition contains a cause of action because Rebecca would not be able to bring a separate action or proceeding against Dr. Kachorek *without* alleging a cause of action. While we agree that Rebecca would not be able to maintain a *separate* action against Dr. Kachorek asking a court to fix his reasonable expert fees under Evidence Code section 730 for *this* case, this fact demonstrates only that Rebecca's petition for joinder is an improper method by which to determine Dr. Kachorek's expert fees. (See part III.B, *post*.) Stated differently, the fact that, as Dr. Kachorek argues, "a joinder cannot be accomplished without asserting a cause of action,"

---

22    Rebecca did not cite Evidence Code section 731 in her petition. Neither Rebecca nor Dr. Kachorek referred to Evidence Code section 731 in their briefing.

22

demonstrates only that Rebecca's joinder petition is not the proper method by which to determine Dr. Kachorek's expert fees under Evidence Code section 730.[23] This fact in no way establishes that Rebecca's petition for joinder contains a cause of action against Dr. Kachorek.

We are also unpersuaded by Dr. Kachorek's contention, emphasized repeatedly in both his opening brief and in his reply brief, that Rebecca's petition seeks the "disgorgement of fees already paid by a party to an evaluator *based on a private agreement*."[24] (Italics added.) Rebecca's petition does not *mention* any such private agreement nor seek reimbursement of fees obtained through such an agreement. Further, Rebecca and Paul's agreement with Dr. Kachorek is not in the record and there is no other affidavit in the record attesting to its contents. Thus, any such private agreement cannot serve as a basis for reversal. (See § 425.16, subd. (b)(2) [in ruling on special motion to strike, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability . . . is based"].)

---

[23] We describe in part III.B, *post*, the proper procedural manner by which the trial court may determine whether to order Dr. Kachorek to repay fees that he has received pursuant to his appointment under Evidence Code section 730. As we explain in part III.B, *post*, we express no opinion with respect to the merits of this question.

[24] In his opening brief, Dr. Kachorek contends that he was retained through a "private agreement," and he makes repeated references in this brief to the fact that he was "privately retained."

Rebecca contends in her respondent's brief that "it is undisputed that [Rebecca and Paul] privately retained [Dr. Kachorek] expressly for the purpose of his acceptance of the court-appointment."

23

Accordingly, we conclude that the trial court properly determined that Rebecca's petition for joinder does not contain a cause of action against Dr. Kachorek. Thus, the trial court properly denied his anti-SLAPP motion.[25]

B. *The proper procedural manner by which the trial court may determine whether to order Dr. Kachorek to repay fees that he has received pursuant to his appointment under Evidence Code section 730*[26]

Although we conclude that the trial court properly denied Dr. Kachorek's anti-SLAPP motion, for the reasons we explain below, joinder of Dr. Kachorek to the marital dissolution action is not a proper means for the trial court to determine whether to order Dr. Kachorek to repay fees that he has received pursuant to his appointment under Evidence Code section 730. Accordingly, since the issue is certain to recur on remand, we explain the proper procedural manner by which the trial court may determine this issue.

As described in part II.D, *ante*, Rebecca's petition asserted that Dr. Kachorek was an indispensable party and sought his compulsory joinder to the action.[27]

Compulsory joinder is addressed in section 389, subdivision (a), which states that a "person . . . shall be joined as a party in the action if . . . *he claims an interest relating to*

---

[25] In light of our conclusion, we need not consider whether the trial court properly concluded, in the alternative, that there is a probability that Rebeca would prevail on her request that the court determine the reasonableness of Dr. Kachorek's fees.

[26] (See § 43 ["the courts of appeal, may affirm, reverse, or modify any judgment or order appealed from, and may . . . direct . . . further proceedings to be had"].)

[27] As discussed in part II.C, *ante*, Judge Mok determined that Dr. Kachorek was an "indispensable party," and ordered Rebecca to file the petition in order to provide Dr. Kachorek with "due process."

24

*the subject of the action* and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring . . . inconsistent obligations . . . ."  (Italics added.)

This general statutory provision applies to family law proceedings.  California Rules of Court, rule 5.24(a)(1), provides that "[a]ll provisions of law relating to joinder of parties in civil actions generally apply to the joinder of a person as a party to a family law case . . . ."

We are aware of no authority that would support the proposition that a trial court must join an expert appointed by the court under Evidence Code section 730 as a *party* to the case in order to make an order pertaining to the expert's fees.  *Laurenti*, which examined Evidence Code section 730 and Rule 5.220 extensively, does not so hold, and we are not aware of any other case law that would support such a conclusion.

Litigation pertaining to an expert's fees should have no bearing on the underlying action and should not affect the judgment in that action.  (Cf. *Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1024 ["Like a motion for attorney fees or sanctions, a motion to declare a self-represented plaintiff a vexatious litigant deals with an ancillary issue and has no bearing on the finality of the judgment or dismissal"].)  Further, compensation awarded to an expert under Evidence Code section 730 is taxable as a cost of suit (Evid. Code, § 731) and "costs are not ordinarily considered *part* of the judgment; rather, they are 'normally viewed as an *incident* of a judgment.' "  (*Bean v.*

25

*Pacific Coast Elevator Corp.* (2015) 234 Cal.App.4th 1423, 1430.) In sum, Dr. Kachorek has, at most, an interest in *ancillary* questions pertaining to his fees that are not the "subject of the action." (§ 389, subd. (a).) Accordingly, on remand, the trial court is directed to vacate its September 11, 2017 order joining Dr. Kachorek as a *party* to the case.

Further, while Dr. Kachorek asserts, without authority, that "law and due process" require that he be served with a summons and petition for joinder in order to determine whether to order him to repay fees received pursuant to his appointment under Evidence Code section 730, we disagree. Due process is ordinarily satisfied by reasonable notice and an opportunity to be heard. (See generally *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212). We are aware of no principle of law that would mandate that Dr. Kachorek be afforded status as a *party* to the action in order to determine ancillary questions pertaining to his fees.[28] Accordingly, on remand, the trial court is directed to issue an order affording Rebecca, Paul, and Dr. Kachorek notice of the court's intent to hold an evidentiary hearing with respect to whether to order Dr. Kachorek to repay to Rebecca and/or Paul fees that he has received pursuant to his

---

[28] We emphasize that we assume, without deciding, that Dr. Kachorek had a right to notice and an opportunity to be heard with respect to fees that he received pursuant to Evidence Code section 730.

appointment under Evidence Code section 730.[29]  The court may issue any ancillary orders that it deems necessary in conducting this hearing.

IV.

DISPOSITION

The order denying Dr. Kachorek's anti-SLAPP motion is affirmed.  On remand, the trial court is directed to determine whether to order Dr. Kachorek to repay fees that that he has received pursuant to his appointment under Evidence Code section 730, in a manner consistent with our directions in part III.B, *ante*.  Rebecca is entitled to recover costs on appeal.

AARON, J.

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.

---

[29]    In his brief on appeal, Dr. Kachorek made several arguments with respect to why it would be improper for the trial court to order him to repay the fees that he was paid to prepare his report, including that he was retained through a private agreement, he is subject to quasi-judicial immunity, and any claim for repayment is barred by the litigation privilege.  We express no opinion on the merits of any of these contentions, all of which Dr. Kachorek is free to advance on remand.