Filed 7/8/21  Marriage of Hagstrom CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of KAREN and MATS HAGSTROM. | |
| KAREN HAGSTROM,<br>        Respondent,<br>v.<br>MATS HAGSTROM,<br>        Appellant. | A159225<br><br>(City & County of San Francisco Super. Ct. No. FDI-15-784762) |

        This is an appeal in a marriage dissolution matter from a court order appointing a child custody evaluator pursuant to Evidence Code section 730[1] and San Francisco Superior Court Local Rules, rule 11.15(F) (Local Rule

---

        [1] Evidence Code section 730 provides in relevant part:  "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required.  The court may fix the compensation for these services, if any, rendered by any person appointed under this section, in addition to any service as a witness, at the amount as seems reasonable to the court."

11.15(F)).[2]  Appellant Mats Hagstrom, M.D. (hereinafter, father), challenges this order on the grounds that Local Rule 11.15(F) violates California law and is therefore invalid.[3]  Father reasons inter alia that this local rule is inconsistent with Family Code section 3112's requirement that the local court pay the costs of child custody evaluations in the first instance and then, upon inquiry into the financial circumstances of the parents, may order reimbursement of the court's expenses if appropriate.  Father asks this court to vacate the order appointing the child custody evaluator and remand for further proceedings.

Respondent, father's ex-wife and mother to their minor son, M.H. (hereinafter, mother), declined to file a respondent's brief.  For reasons set forth *post*, we conclude this appeal is taken from an interlocutory, nonappealable order and therefore dismiss it.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of this marital dissolution case is for the most part irrelevant to this appeal, which raises one wholly legal issue relating to the legality of Local Rule 11.15(F).  We therefore provide only a brief summary of the underlying events.

The parties were married in 2005 and have one child, M.H., born November 2007.  After the couple separated in April 2014, mother filed a petition to dissolve their marriage on November 10, 2015.

---

[2] Local Rule 11.15(F) requires the use of San Francisco Unified Family Court (SFUFC) Forms, form 11.16F (form 11.16F) in conjunction with Judicial Council Forms, form FL-327 for all orders appointing a child custody evaluator.

[3] Father, in his briefing, identifies "Local Rule 11.16.F" as the subject of his challenge.  However, we conclude based on the substance of his argument that in fact he is challenging Local Rule 11.15(F).

On October 10, 2017, mother filed a request for order on custody, visitation, support and attorney fees and costs (RFO).  Noting that she and father had been sharing custody of M.H. on a week on/week off basis, mother collectively sought (among other things) formal orders for joint legal and physical custody, vacation and holiday orders with specific terms as to length and notice of itinerary, child support, and temporary spousal support while she completed graduate studies and a student teaching program.

In January 2018, mother filed a declaration in support of the RFO in which she proposed a custody schedule change based on M.H.'s best interests.  Specifically, she sought "a 2/2/5/5 schedule [during the school year] . . . , wherein [M.H.] would be with [father] each Monday and Tuesday, with me each Wednesday and Thursday and then we would alternate the Friday through Sunday periods."  Mother attested that M.H. (who is on the autism spectrum) was adversely affected by the present week on/week off schedule and had a hard time transitioning between parents' homes.  Mother believed that a 2/2/5/5 schedule would benefit M.H. by preventing him from getting too "entrenched" at either home.  She also believed her proposed schedule would allow M.H. to take a break from the afterschool activities that father scheduled for him, which she deemed excessive.

On February 26, 2018, father filed a responsive declaration to the RFO, consenting to certain items (e.g., child support) but objecting to others (e.g., spousal support) and asking for an evidentiary hearing.  As to mother's proposed scheduling change, father asked that the court maintain the status quo unless or until M.H.'s therapist made recommendations on the issue.

On February 27, 2018, a stipulation and order was entered that, among other things, continued the hearing on mother's RFO to March 8, 2018, to

allow the parties to pursue settlement negotiations concerning all outstanding issues and required the parents to continue shared physical custody of M.H. on a week on/week off schedule except for any informally agreed-to schedule changes pending the hearing on mother's RFO.

On April 29, 2019, mother filed a new RFO seeking: (1) immediate imposition of a new parenting schedule wherein M.H. would be with father on alternate weekends from Friday school pick-up to Monday school drop-off and for up to two dinner visits per week, and with mother all other times; (2) alternatively, a court order that parents submit to a brief focused assessment (BFA) with a neutral mental health professional to determine the best parenting schedule for M.H. going forward; and (3) an order that father commence coparent counseling with mother.[4]

On May 1, 2018, following an evidentiary hearing at which both parents testified, the trial court made several rulings. Relevant here, the court denied mother's request for a 2-2-5-5 schedule without prejudice, finding that an immediate scheduling change would be disruptive to M.H. in the middle of the school year and that guidance should be received on the issue from M.H.'s therapist.

On May 30, 2018, father filed a responsive declaration asking the court to (among other things) adopt an order denying mother's request for a BFA given that the parties had been ordered to seek guidance from M.H.'s therapist regarding any modification to the parenting schedule. Father asked that the parties be ordered to continue to seek such guidance from the therapist. He also asked for an evidentiary hearing regarding (among other

---

[4] On the same day, mother filed a separate RFO seeking enforcement of certain provisions of the judgment of dissolution and sanctions, which was subsequently resolved by the parties' stipulation.

4

things) the parenting schedule, support issues and mother's request for court-ordered cocounseling.

A hearing on these matters was held August 1, 2019. Afterward, the court issued an order granting mother's request for a BFA, setting a date for the parties to exchange names of potential evaluators, and setting forth the "parties['] agree[ment] that payment for the BFA will be made from Ms. Hagstrom's attorney's trust account." A hearing on the status of the BFA was set for September 12, 2019.

Following the September 12, 2019 hearing, the court issued an order appointing Dr. Jay Seiff-Haron as the BFA evaluator. The court then reserved jurisdiction as to the appropriate parenting schedule and set a hearing on November 19, 2019, for the purpose of reviewing the BFA.

On September 30, 2019, the trial court then entered the order appointing child custody evaluator prepared on Judicial Council Forms, form FL-327 and attaching form 11.16F. This order, among other things, provided that Dr. Jay Seiff-Haron was appointed child custody evaluator under the authority of Evidence Code section 730 and California Rules of Court, rule 5.220, for the purpose of providing the court with a BFA addressing: " 'What is the appropriate timeshare/parenting plan/schedule for [M.H.]?' "

Regarding Dr. Seiff-Haron's fees and costs, the September 30, 2019 order stated: "Payment will be made as follows: [¶] . . . [¶] . . . As set forth in the attached SFUFC Form 11.16F." The attached form 11.16F, in turn, stated in relevant part: "The court orders the parties to pay the evaluator's fees and costs as follows, unless there is a subsequent explicit order to the contrary: [¶] "See below * will pay ___ % of the evaluator's fees and expenses, including the advance deposit and ___ will pay ___ % of the evaluator's fees and expenses, including the advance deposit. The deposit will be paid by the

5

parties prior to the onset of the evaluation. [¶] * The payment for the BFA shall be made from Ms. Hagstrom's attorney's trust account."

In other words, the order and form 11.16F did not specifically require either party to pay a certain share of Dr. Seiff-Haron's fees and expenses (including the advance deposit) but merely stated that the payment for these items was to be made from mother's attorney's trust account. The order also expressly reserved jurisdiction for the trial court "regarding any dispute regarding fees or any other provision of this order. Jurisdiction is also reserved to San Francisco Superior Court to determine the allocation and characterization of any funds advanced/paid by either parent and the merits of any dispute over such fees."

On November 18, 2019, father filed an appeal of the September 30, 2019 order.

## DISCUSSION

Father challenges the September 30, 2019 order appointing Dr. Seiff-Haron as the child custody evaluator on one ground. He contends the local rule pursuant to which the trial court acted, Local Rule 11.15(F), is contrary to California law and therefore invalid.

However, in order for this court to decide any issue on appeal, legal or otherwise, the appellant (father) must have appealed from an order that is in fact appealable. (*Jennings v. Marrelle* (1994) 8 Cal.4th 121, 126 ["The existence of an appealable judgment [or order] is a jurisdictional prerequisite to an appeal"].) The September 30, 2019 order is not. Rather, it is an interlocutory order made in connection with a pendente lite child custody order. As explained by our appellate colleagues in the Third Appellate District: "A temporary custody order is interlocutory by definition, since it is made pendente lite with the intent that it will be superseded by an award of

6

custody after trial.  (Fam. Code, §§ 3022, 3040, 3060–3062.)  Code of Civil Procedure section 904.1 bars appeal from interlocutory judgments or orders 'other than as provided in paragraphs (8), (9), and (11). . . .'  (Code Civ. Proc., § 904.1, subd. (a)(1)(A).)  Temporary custody orders are not listed in any of those paragraphs.  Therefore this statute precludes the appealability of such orders.

"This result is in accord with the general rule that, under the 'one final judgment' rule, appeal lies only from final judgments in actions or proceedings, or from orders after judgment that affect the judgment or its enforcement; it does not lie from interlocutory judgments or orders unless specifically made appealable by statute.  (Code Civ. Proc., § 904.1, subd. (a); [citations]; see generally 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, §§ 57–59, 135–140, pp. 113–115, 201–207.)"  (*Lester v. Lennane* (2000) 84 Cal.App.4th 536, 560–561.)

Acknowledging its interlocutory nature, father argues that the September 30, 2019 order is appealable as an interlocutory order collateral to the matter's main issue that is dispositive of the parties' rights as to this collateral matter (i.e., modification of the parenting schedule) and directs the payment of money or performance of an act.  (E.g., *Sarracino v. Superior Court* (1974) 13 Cal.3d 1, 9.)

We disagree.  The September 30, 2019 order is not dispositive of mother's and father's rights as to the collateral issue of whether their parenting schedule should be modified.  Nor does this order direct mother or father to make a payment of money, although it appears to anticipate such an order in the future.  As explained in *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1216–1217:  "A judgment [or order] is final ' " 'when it terminates the litigation between the parties on the merits of the case and

7

leaves nothing to be done but to enforce by execution what has been determined.' " ' [Citations.] '[W]here anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory' and not appealable." Here, it is clear further judicial action was anticipated by the trial court on the allocation of the costs and expenses of the child custody evaluation when it issued the challenged order. (Cf. *Sharon v. Sharon* (1885) 67 Cal. 185, 195–196 ["If the order for the payment of alimony and counsel fees is in the nature of a final judgment, it is appealable. It certainly possesses all the essential elements of a final judgment. Nothing remained to be done except to enforce it, and for that purpose an execution might issue and be proceeded on, as if the judgment had been rendered in an ordinary action for the recovery of a specific sum of money"].)

*In re Marriage of Laurenti* (2007) 154 Cal.App.4th 395 (*Laurenti*) is illustrative. There, the trial court appointed an expert pursuant to Evidence Code section 730 in a marital dissolution matter to conduct an evaluation regarding where the parties' children should attend school. (*Laurenti,* at p. 397.) The mother moved to remove the expert due to the expert's violation of court rules. (*Id*. at p. 400.) The trial court granted her application; however, in doing so the court ordered the mother to pay "[a]ll of [the expert's] fees and costs." (*Id*. at pp. 401–402.) After receiving the expert's bill, the mother appealed the order directing her to pay all of the expert's fees and costs. (*Ibid*.) The reviewing court ruled in her favor, concluding: "When read together, we interpret Evidence Code section 730 and California Rules of Court, rule 5.220 to mean a trial court must (1) decide whether an evaluator should receive any compensation for his or her services, (2) determine a

reasonable amount of compensation and (3) state which party or parties will bear what portion of the fees and costs." (*Id.* at p. 403.)

Our case is in a much different procedural posture than *Laurenti*. As there, the trial court here appointed an expert (Dr. Seiff-Haron) pursuant to Evidence Code section 730 to evaluate a parenting schedule issue. However, unlike in *Laurenti*, when the September 30, 2019 order was entered, Dr. Seiff-Haron had not yet conducted the BFA; nor had the trial court considered Dr. Seiff-Haron's compensation or ordered father to pay any or all of his fees costs or costs. Instead, the order states only that payment of the expert's fees and costs is to be made from the trust account of mother's attorney, but does not allocate the total amount of fees and costs, which is not yet known, between father and mother. At the same time, the order expressly reserved jurisdiction for the court to resolve issues that may arise regarding such allocation—a clear indication that future judicial action is anticipated. Under these circumstances, we conclude father's appeal is premature and must be dismissed. (See *In re Marriage of Olson* (2015) 238 Cal.App.4th 1458, 1462 ["Christopher did not appeal from a court order finally approving or denying a modification of custody, but rather from an order that the parties attend a parenting plan assessment. This order was 'preparatory t[o a] later proceeding[]' and therefore not appealable"].)

Lastly, father asks that we treat his appeal as a petition for an extraordinary writ and rule on the merits, explaining that the appeal presents an issue of continuing public interest that is likely to recur. (See, e.g., *In re Marriage of Olson, supra*, 238 Cal.App.4th at pp. 1462–1463.) We decline to do so, as it is unwarranted at this time and under these circumstances when the relevant record remains incomplete.

9

## DISPOSITION

The appeal taken from the September 30, 2019 order, a nonappealable, interlocutory order, is dismissed.

_____

Jackson, J.


WE CONCUR:


_____

Petrou, Acting P. J.


_____

Wiseman, J.*


A159225/*Hagstrom v. Hagstrom*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.