Filed 3/29/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| A. K. PETERSON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>K. THOMPSON,<br><br>        Defendant and Respondent. | A157874<br><br>(Placer County<br>Super. Ct. No. SDR0034174) |

A.K. Peterson (mother) appeals a May 28, 2019 order requiring her to share in the expense of a court-ordered child custody evaluator who was appointed under Evidence Code section 730 in connection with a long-running custody dispute with the father of her minor daughter. The payment order was entered over mother's continuing objection that she cannot afford to pay any of the evaluator's fee. Her principal contention is that, given her financial condition, the court erred when it re-allocated a portion of that expense to her after the fact. K. Thompson (father) did not contend below that the court was precluded from considering mother's claimed inability to pay in allocating the evaluator's fee, and he has not filed a respondent's brief in this appeal.

We must decide whether the manner in which the court proceeded in apportioning the expense was lawful. We conclude that in allocating the costs of a court-appointed child custody evaluator, the court must consider the parties' ability to pay, whether the child custody evaluator is appointed

1

by the court under Evidence Code section 730 or under the more specific provisions of the Family Code (Family Code sections 3111 to 3112).

The record does not indicate that the trial court considered all of mother's expenses before ordering her to contribute to the costs of the court-ordered child custody evaluation. We remand the matter for a new hearing addressing mother's ability to pay some or any of the costs of the child custody evaluator.

## BACKGROUND

The appellate record in this case begins in October 2016, when mother filed a request to reinstate joint legal and physical custody of her minor daughter, after a lengthy period in which father exercised sole legal and physical custody based on a child welfare referral that, according to mother, had recently been "overturned."[1]

About three years later, on May 28, 2019, the trial court re-allocated between mother and father about $13,000 in fees that father had paid to a court-ordered child custody evaluator, Dr. Sidney Nelson. Specifically, over mother's objection that she could not afford to pay the evaluator's fee, the court directed her to bear 25 percent of the fee and father 75 percent, and thus directed her to reimburse father $3,468.75 at the rate of $290 per month until paid. It is from this May 28, 2019 reallocation order that mother has appealed.[2]

---

[1] The details are unclear but irrelevant to this appeal.

[2] The notice of appeal states that it is from an unspecified order or judgment under Code of Civil Procedure section 904.1, subdivision (a)(3)–(13). Mother states both in her notice designating the appellate record and in her appellate brief that she has appealed an order entered on May 28, 2019. The record contains the court's minute order of that date, as well as a transcript

2

Mother, appealing in propria persona, has not explained the background of the custody dispute, nor the origin and nature of Dr. Nelson's role. We have determined the following from the appellate record.

## A. The Initial Custody Evaluation in 2013

In April 2013, a child welfare referral was made concerning mother's conduct toward her daughter. A few months later, in September 2013, Dr. Nelson prepared a child custody evaluation recommending that mother attend 40 sessions of individual therapy to address various subjects, father continue to have legal and physical custody of their daughter and mother have up to 6 hours of supervised weekly visitation. Dr. Nelson also recommended that after mother completed her treatment goals, both parents meet with a court-appointed mediator or counselor to recommend a further parenting plan. Dr. Nelson charged $16,747 for his services. In April 2014, the court adopted Dr. Nelson's recommendations. For the next several years, we gather from the record that mother attended therapy and had supervised visitation with their daughter. During this time, she was paying child support to father and also had been ordered to bear the cost of her supervised visitation.

---

of the hearing held on that date. We liberally construe her appeal to be taken from the May 28, 2019 order.

Elsewhere in her briefing, mother purports to challenge two earlier orders: one entered on February 4, 2019, requiring her alone to pay for reunification therapy with her daughter with no financial contribution from father, and another order entered on February 7, 2019, that directed her to reimburse $7,785.95 to father. Because the record does not contain a notice of appeal from either order, we lack jurisdiction to review them and thus disregard mother's arguments about those rulings.

3

At some point in 2015, mother filed for bankruptcy and, through her bankruptcy, was trying to repay father her share of the approximately $17,000 Dr. Nelson had charged for his first evaluation, which father had advanced.[3] The court's order allocating half of the cost of that initial evaluation to mother is relevant background information but is not the subject of this appeal.

## B.   The Updated Custody Evaluation, Ultimately Completed in 2017 After Protracted Litigation Over Its Potential Cost

At a hearing held on May 6, 2015, which was about two and a half years after Dr. Nelson completed his initial evaluation, the superior court (the Hon. John Ross) ordered the parties to obtain an update from Dr. Nelson on the recommendation of the parties' mediator. The court wanted Dr. Nelson to review the case files post-dating his initial evaluation in 2013, conduct another round of interviews, and make an updated recommendation to the court concerning custody and visitation. At that hearing, the parties discussed the possible cost this would entail, mother's counsel objected that mother couldn't afford to pay Dr. Nelson anything further, and the court indicated the parties could return to court to discuss how to proceed if Dr. Nelson's quote for the updated evaluation exceeded $10,000. The court noted mother had filed a declaration indicating she had received a quote from

---

[3] It is unclear whether, by this juncture, she had been ordered to bear any portion of those expenses. There is some indication in the record she had been ordered to pay half of Dr. Nelson's fee, and that this was, per her counsel's statement at the hearing, "one of the main reasons" that precipitated her bankruptcy filing. Much later, on February 7, 2019, the court directed mother to reimburse father $7,785.95 for half of Dr. Nelson's initial evaluation, payable monthly in $100 installments; mother did not appeal that order. (See footnote 2, *ante*, page 2.)

4

Dr. Nelson of $10,000 to do an updated review, and the court expressed the view that "$10,000 for an updated review sounds a little high to me."

The matter was left unresolved after the following colloquy:

"[FATHER]: All right. Your Honor, if it gets to be more than $10,000, I'll cover my half, but if ends up being more than that, I will cover any excess above 10,000.

"THE COURT: Do you really think it's going to cost 10,000 for an updated report?

"[FATHER]: I do not. That's why I have no problem saying that.

"[MINOR'S COUNSEL]: How much was the [initial] 730?

[¶] . . .[¶]

"[FATHER]: That one was very expensive. That one was like 17,000. He said that was one of the most expensive ones he's ever done and the most intense he's ever done, but this is just an update.

"[THE COURT]: . . . [M]aybe the reality is that even after Dr. Nelson gives such an order that we're talking about, just saying all we want is an updated report, we want him to review everything that has transpired since his last report in September '13, talk to both parents and make recommendations, maybe indeed that is $10,000.

"[MOTHER'S COUNSEL]: And then there's the issue, Your Honor, my client can't afford it.

"[FATHER]: Maybe it is and the money is the big issue for mother, then to me our daughter's well-being is more important than whatever money she's complaining about."

Ultimately, the court directed mother's counsel to contact Dr. Nelson to apprise him of the scope of review the court had in mind, inquire about the cost, and return to court if necessary to address the issue. Over mother's

5

counsel's continuing objection that even a share of a $10,000 fee would be too expensive for mother, the court added that "if he says $10,000, then we may have to come back to court and talk about how we're going to proceed, but there is not much I can do at that point if that's what Dr. Nelson's recommending and charging, I don't know what to do."

From that point forward, the subject of Dr. Nelson's fee remained a subject of dispute and was raised at numerous hearings and in many filings by mother who repeatedly objected that she was unable to pay his fees.

After the May 6, 2015 hearing, mother's counsel contacted Dr. Nelson who declined to quote a total cost and also stated he would require a $2,000 retainer from each parent to begin work. This was brought up at a hearing on October 18, 2016, before a different judicial officer (the Hon. John Paulsen, Commissioner). At that hearing father agreed to cover the cost of Dr. Nelson's $4,000 retainer so they could overcome the financial obstacle to securing an updated evaluation ("I will cover the complete $4,000") and asked that mother split anything above that cost with him. Notwithstanding father's offer to pay the entire retainer, Commissioner Paulsen ordered father only to "advance" the cost of Dr. Nelson's retainer, reserved jurisdiction to reallocate that payment, and ordered that any excess fee would be split equally.

After that, mother tried to return to Dr. Nelson but was advised by his office that he would require her to make an initial $1,000 payment on top of the $4,000 retainer father had volunteered to pay, which she was informed was "mandatory" and intended to secure some of his anticipated fee. She also was informed that his costs would greatly exceed $4,000. Then, in a joint conference call with both parents, Dr. Nelson insisted on a guarantee that his fee would be paid in full before moving forward. Father offered to advance all

6

the costs of Dr. Nelson's expenses subject to reallocation, and mother declined on the ground she was financially unable to contribute.

This impasse precipitated a new round of competing requests to the court, filed by each party on December 1, 2016. Mother filed a request for an order vacating or amending the prior orders requiring Dr. Nelson's updated evaluation, on the ground that she could not afford to pay Dr. Nelson $1,000, much less one-half of anything above his $4,000 retainer. Citing details of her financial predicament, including the fact of her bankruptcy and that she was still trying to reimburse father for her share of Dr. Nelson's previous evaluation, was shouldering basic living expenses for herself and her other child, was paying father child support, and was paying the costs of her court-ordered supervised visitation with her daughter, mother's declaration stated she was in dire straits: "As it stands, I often have to scrimp and save to afford the supervised visits and there have been times where I simply do not have the funds to pay for the supervised visits. I would and do anything I can for [daughter]. But when I am put in a position where I have to choose between being able to feed my son, pay my rent, or pay for supervised visits, I am forced to sacrifice the supervised visits which only further hampers my relationship with [daughter]. [¶] Now, the current orders are placing me in a position where my case cannot move forward unless I can pay $1,000 to Dr. Nelson by January 2, 2017 and that is impossible for me."

Father filed a competing request, asking that mother be ordered to participate in the updated evaluation (including attend a scheduled upcoming appointment with Dr. Nelson), and that he be ordered to pay all of Dr. Nelson's fees subject to later reallocation. At a hearing held on December 2, 2016, before Commissioner Paulsen, where mother's counsel again objected that mother could not afford to pay Dr. Nelson, both of father's

7

requests were granted—including directing mother to participate in Dr. Nelson's evaluation, on pain of possible sanctions.

Thereafter, around May 2017, Dr. Nelson completed his updated evaluation (only his ultimate recommendation concerning a visitation plan is in the record). Including the initial $4,000 retainer, Dr. Nelson's fee for the second evaluation came to $13,875. His invoice reflects that he spent about 12.5 hours interviewing and observing the parents and daughter, 18.25 hours reviewing the record, and another 15.5 hours preparing his updated report. Dr. Nelson recommended that father continue to have sole legal and physical custody of their daughter, with supervised visitation for mother.[4]

About a year and a half later, on November 14, 2018, father filed a request for an order requiring mother to reimburse him for a portion of Dr. Nelson's fee for the second evaluation, which he had paid in full.[5] He did not seek reimbursement for any portion of the $4,000 retainer. His papers stated that he had "paid the initial $4,000 cost, plus was ordered to pay all of Dr. Nelson's fees subject to reallocation," and asked only that mother reimburse him for one-half of the remaining balance ($9,875), for a total of $4,937.50.

Mother opposed his motion, again on the ground that she was financially unable to contribute to Dr. Nelson's fee, this time also citing

---

[4] The court later adopted Dr. Nelson's recommendation, at a hearing held on September 18, 2018. At that time, it also vacated a pending trial date and directed mother to engage in four more months of therapy, following which the court would decide whether to order reunification therapy between mother and her daughter.

[5] For reasons not entirely clear and not pertinent here, the request was apparently delayed because father had filed earlier requests to be paid a portion of Dr. Nelson's fee that he later withdrew.

8

(among other things) the fact that the court had granted her an indigent fee waiver in the case. Mother reported she had only been able to pay about $588 towards Dr. Nelson's initial fee to date. She also argued she had recently discovered that, for about the past four years, she had been paying father court-ordered child-support add-ons for daycare costs when in fact the daycare provider was no longer in business and their daughter had not been attending daycare, resulting in an overpayment to father totaling about $6,016. She asked the court to offset the daycare costs and interest against Dr. Nelson's fee and deem her contribution to his fee paid in full.

The matter ultimately proceeded to a final hearing at which the court entered the order challenged here on May 28, 2019. The court ordered mother to reimburse father $3,468.75 of the nearly $14,000 he had paid to Dr. Nelson beyond the retainer, payable at a rate of $290 per month for 12 months until paid in full. The court arrived at a ratio of allocating 25 percent of the expense to mother based on a child support calculation of her "net spendable income" relative to father's, apparently without considering many of her basic living expenses and other obligations.

Mother then filed this timely appeal.[6] No respondent's brief has been filed.

### DISCUSSION

Mother contends the court's order requiring her to reimburse father for a portion of Dr. Nelson's fee failed to consider her inability to pay and thus:

---

[6] Because the order is collateral to the main custody issue, directs the payment of money and is the court's final determination of the question, it is an appealable collateral order. (See, e.g., *Hanna v. Mercedes-Benz USA, LLC* (2019) 36 Cal.App.5th 493, 506; *Roberts v. Packard, Packard & Johnson* (2013) 217 Cal.App.4th 822, 830, fn. 4.)

9

(1) violated her constitutional rights to access to the courts, equal access to justice and due process; and (2) is contrary to law. On the latter point, she contends the court abused its discretion in allocating a portion of the expense to her because of her demonstrated inability to pay, citing to a variety of statutes in the family law context that require an assessment of a party's ability to pay. She asserts that as a matter of constitutional avoidance, we should construe the relevant statutes as mandating consideration of her inability to pay the fees and costs of a court-appointed child custody evaluator as well.

We agree with mother that we should try to resolve this matter on statutory grounds rather than constitutional ones if possible, and so that is where we will begin. (See *People v. Waldon* (2023) 14 Cal.5th 288, 307 [" 'we avoid resolving constitutional questions if the issue may be resolved on narrower grounds' "].)

## I.

### *Evidence Code Sections 730 and 731*

Below, the trial court appointed Dr. Nelson as a child custody evaluator under Evidence Code section 730, which confers general authority on trial courts to retain court-appointed experts. The court appointed Dr. Nelson pursuant to this statute at Dr. Nelson's request, after mother raised concerns about the cost of proceeding with the update and said it was doing so for Dr. Nelson's "protection" so that "he then becomes an expert of the Court, even though the parties are paying for it."[7]

---

[7] In a letter to the parties dated August 3, 2015, addressing the potential cost and scope of an updated evaluation, Dr. Nelson had written that "I would require that the court order state that this is an updated 730.

10

Evidence Code section 730 states in relevant part: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required." This statute is generally understood to empower the court to appoint a child custody evaluator to report on the best interest of children to assist the court in making a change in custody determination. (*In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 649; see also Cal. Rules of Court, rule 5.220.)

In civil cases, the compensation of a neutral expert appointed under Evidence Code section 730 is left primarily to private parties. The statute states that "[t]he court may fix the compensation for these services, if any, rendered by any person appointed under this section, in addition to any service as a witness, *at the amount as seems reasonable to the court*." (Evid. Code, § 730, italics added.) In turn, Evidence Code section 731 provides in relevant part that, "in all civil actions" (with exceptions not relevant here) "the compensation fixed under Section 730 shall, in the first instance, be apportioned and charged to the several parties *in a proportion as the court may determine* and may thereafter be taxed and allowed in like manner as other costs." (*Id.*, § 731, subd. (c), italics added.) Similarly, rule 5.220 of the California Rules of Court, which specifically governs court-ordered child

This designation is only for my legal protection and is not meant to convey the potential coast [*sic*] of an update."

custody evaluations, requires the trial court to "[d]etermine and allocate between the parties any fees or costs of the evaluation" ordered by the court. (Cal. Rules of Court, rule 5.220(d)(1)(D).) Taken together, these statutes and rule 5.220 require the trial court, when it appoints a child custody evaluator, to do three things: "(1) decide whether an evaluator should receive any compensation for his or her services, (2) determine a reasonable amount of compensation and (3) state which party or parties will bear what portion of the fees and costs." (*In re Marriage of Laurenti* (2007) 154 Cal.App.4th 395, 403; accord, *In re Marriage of Benner* (2019) 36 Cal.App.5th 177, 191-193; *In re Marriage of Adams & Jack A.* (2012) 209 Cal.App.4th 1543, 1568.)[8] The legal standard governing the apportionment of such costs between the parties is an issue of first impression.

Mother cites no authority specifically interpreting Evidence Code section 731 to require consideration of the parties' ability to pay in any context. We agree with mother, however, that in general the Legislature has specified that a party's ability to pay does matter when allocating the financial burdens associated with family law litigation. Family Code section 270 broadly states: "If a court orders a party to pay attorney's fees or costs under this code, the court shall first determine that the party has or is reasonably likely to have the ability to pay." (Italics added.) Another example is the statute governing awards of sanctions based on a party's own conduct, which requires the court to consider a party's ability to pay and prohibits sanctions that will impose "an unreasonable financial burden."

---

[8] No issue has been raised concerning the court's failure to evaluate whether Dr. Nelson's billings were reasonable. Nor has mother claimed any error by the trial court in addressing or deciding that question. We therefore do not address these matters.

(Fam. Code, § 271; *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 291-292.)

In addition, and as more directly pertinent, the court possesses broad discretion in fashioning the amount of needs-based awards of attorney fees and litigation costs in family law matters (see Fam. Code, §§ 2030, 2032 [proceedings for marital dissolution, separation or nullity]; *id.,* §§ 3120, 3121 [child custody proceedings between spouses]; *id.,* §§ 7605, 7640 [child custody proceedings under Uniform Parentage Act]), which is the closest analogy to father's motion here seeking re-allocation of the costs of the custody evaluation.[9] A party's ability to pay is a factor in that analogous cost-shifting context. (See Fam. Code, § 2030, subd. (a)(2) [needs-based order for attorney fees and costs mandatory "[i]f the findings demonstrate disparity in access and ability to pay"]; *id.,* § 3121, subd. (b) [mandatory award of attorney fees and costs if there is "disparity in access and ability to pay," including amounts sufficient to allow pro per litigant to hire attorney "if [the] other party has the financial ability, to pay"]; *id.,* § 7605, subd. (b) [making order

---

[9] Father's request for reallocation of the $14,000 portion of the expense was, in effect, a request for an award of costs from mother, in an amount equal to a portion of the costs he had paid for the custody evaluation. Likewise (and, conversely), mother's objection to repaying him was, in effect, a request that she be awarded from him a portion of what might otherwise be characterized as *her* litigation expenses. Viewed either way, father's reimbursement motion was analogous to a request by one (or both) of them for an award of litigation costs from the other in a contested child custody case. (See *In re Marriage of Munguia* (1983) 146 Cal.App.3d 853, 864-866 [cost of experts retained by wife in divorce action, including child custody expert, held compensable through interim award of costs from husband]; *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1316 [under Fam. Code §§ 2030 and 2032, "[a]ttorney fees, financial experts, other experts, . . . and other costs are all awardable"].)

awarding attorney fees and costs mandatory in child custody proceedings "[i]f the findings demonstrate disparity in access and ability to pay"]; *id., § 7640* [incorporating standards set forth in Fam. Code §§ 2032 and 7605].)  The public policy behind these statutes is to " ' "level[] the playing field" ' " between the parties and permit the lower-earning litigant to pay for experts and other costs (as well as for a lawyer, if requested) without having to fund litigation with resources intended for basic living expenses.  (*In re Marriage of Tharp, supra,* 288 Cal.App.4th at pp. 1315-1316.)

Thus, considering the statutory scheme as a whole (*Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 381), it would appear the Legislature intended that when a court allocates the expenses of a court-appointed expert in a child custody dispute it must consider a party's ability to pay.  (Cf. *In re Marriage of Laurenti*, *supra,* 154 Cal.App.4th at p. 404, fn. 11 [dicta analogizing such a determination to the imposition of sanctions under Fam. Code § 271, pursuant to which "the court must . . . take into consideration the party's ability to pay"].)

## II.

### *Family Code Sections 3111 and 3112*

The conclusion that the trial court must apportion the costs of a child custody evaluation based on the parties' ability to pay is buttressed by more specific Family Code provisions our own research has revealed, which were briefly alluded to at one of the many hearings below but never focused on.

Although not cited by mother, Family Code section 3111 specifically authorizes the appointment of child custody evaluators in contested custody cases.  It states in pertinent part:  "In a contested proceeding involving child custody or visitation rights, the court may appoint a child custody evaluator

to conduct a child custody evaluation in cases where the court determines it is in the best interest of the child.  The child custody evaluation shall be conducted in accordance with the standards adopted by the Judicial Council pursuant to Section 3117, and all other standards adopted by the Judicial Council regarding child custody evaluations."  (Fam. Code, § 3111, subd. (a).)  A "child custody evaluator" is a court-appointed investigator.  (Cal. Rules of Court, rule 5.220, subd. (c); see *id.* subd. (b).)  A "court-appointed investigator" is defined as "a probation officer, domestic relations investigator, or court-appointed evaluator directed by the court to conduct an investigation pursuant to this chapter."  (Fam. Code, § 3110.)

All the minimum required professional qualifications for child custody evaluators are the same under Evidence Code section 730 and Family Code section 3111.  (See Fam. Code, § 3110.5, subds. (b)(1), (c); Cal. Rules of Court, rule 5.220(b).)  But there are some differences.  For example, the Legislature has enacted specific confidentiality protections and procedural mechanics governing the use and admissibility of the report of an evaluator appointed under Family Code section 3111.

In addition, and as directly relevant here, the manner of compensating child custody investigators appointed under the Family Code differs significantly from that of experts appointed in civil cases under Evidence Code section 730.  Family Code section 3112 states:  "(a) Where a court-appointed investigator is directed by the court to conduct a custody investigation or evaluation pursuant to this chapter or to undertake visitation work, including necessary evaluation, supervision, and reporting, the court *shall inquire into the financial condition of the parent, guardian, or other person charged with the support of the minor.  If the court finds the parent, guardian, or other person able to pay all or part of the expense of the*

15

*investigation, report, and recommendation, the court may make an order requiring the parent, guardian, or other person to repay the court the amount the court determines proper.* [¶] (b) *The repayment shall be made to the court.* The court shall keep suitable accounts of the expenses and repayments and shall deposit the collections as directed by the Judicial Council." (Italics added.) Family Code section 3112 thus (1) imposes an affirmative duty on courts to assess a party's ability to pay the expenses associated with a child custody investigation or evaluation; (2) makes a party's contribution towards those expenses discretionary, not mandatory, even if the party has the ability to pay; and (3) presumes the court may initially bear the costs of an evaluation and so specifies that repayment is to the court, not a private party, thus placing the initial obligation to determine the amount of compensation and to compensate such evaluators with the court itself, not the parties.

These parallel statutory schemes give rise to several issues, with significant potential implications for the procedures governing the appointment and use of child custody evaluators in contested family law cases. Chief among them is whether Evidence Code section 730 even applies to such experts given the Legislature's more specific statutory authorization to appoint them under the Family Code. In addition, at various times below, the trial court and counsel for the parties[10] expressed confusing views about

---

[10] At all times below in the records mother provided us and at the hearings referenced in this opinion, mother was represented by counsel. Her counsel stated on the record, however, that mother was not paying any attorney fees.

16

the two statutory mechanisms suggesting they had different requirements.[11] We express no opinion on whether there are any significant differences between the two statutes' requirements, however, because mother's only argument is that she cannot afford to pay anything towards Dr. Nelson's second fee.

We construe Evidence Code sections 730 and 731, subdivision (c), at least in the context of custody proceedings, in a manner consistent with Family Code section 3112 and rule 5.220(d)(1)(D) and (e)(1)(E) of the California Rules of Court, to mandate an ability to pay determination when allocating between the parties the costs of such an expert.

This follows principally from settled rules of statutory interpretation, pursuant to which specific statutes take precedence over more general ones and later-enacted statutes control over earlier ones. (*State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 960-961; see also generally *People v. Superior Court (Ortiz)* (2022) 81 Cal.App.5th 851, 858-859.) As compared to Evidence Code sections 730 and 731, subdivision (c), Family Code section 3112 is the more *specific* statute governing the compensation of court-appointed child custody evaluators. Indeed, "family law issues are resolved through specialized procedures that are removed from ordinary

_____

[11] For example, counsel expressed views suggesting the scope and cost of a child custody evaluation might differ, depending on whether it is undertaken pursuant to Evidence Code section 730 or the more specific provisions of the Family Code, with the incorrect understanding that a custody evaluation under Evidence Code section 730 (rather than Family Code section 3111) must be extensive and necessarily involves psychological testing. One court commissioner who presided over the case expressed the view that Evidence Code section 730 "has nothing to do with child custody," and that an appointment under Evidence Code section 730 is simply intended to "protect" a child custody evaluator's ability to get paid.

17

civil actions," and thus a civil statute is applicable in family court proceedings only *"if it does not conflict with statutes and rules adopted under the Family Law Act."* (*In re Marriage of Guasch* (2011) 201 Cal.App.4th 942, 947-948, italics added [holding general injunction bond requirement of Code Civ. Proc. § 529 inapplicable to injunction issued in marital dissolution proceeding restraining third party from executing on community property pending its division].)

Family Code section 3112 is also the more *recent* statute.  It was adopted in 1993 (Stats. 1993, ch. 219, § 116.81; see also Legis. Counsel's Dig., Assem. Bill No. 1500, Stats. 1993, ch. 219 (1993-1994 Reg. Sess.) Summary Dig., p. 3), based on legislation originally enacted in 1969 (see Stats. 1969, ch. 1608, § 8, p. 3331 [adopting former Civ. Code, § 4602]; Stats. 1992, ch. 427, § 14, p. 1571 [most recent version]; Stats. 1992, ch. 162, § 3 [repeal]; see also Cal. Law Revision Com. com., West's Ann. Fam. Code foll. § 3112). By contrast, Evidence Code section 731 was adopted in 1965 (Stats. 1965, ch. 299, § 2), based on legislation originally enacted in 1925.[12]

Regarding compensation of experts, Evidence Code sections 730 and 731, subdivision (c) may be harmonized with Family Code section 3112 by construing Evidence Code sections 730 and 731, subdivision (c) to mandate an inquiry into a party's ability to pay the costs of a court-appointed expert

---

[12] See Tentative Recommendation and A Study Relating To The Uniform Rules of Evidence, Article VII. Expert And Other Opinion Testimony, 6 Cal. Law Revision Com. Rep. (March 1964) pp. 946-947 (former Code Civ. Proc. § 1871); Recommendation Proposing An Evidence Code, Cal. Law Revision Com. Rep. (Jan. 1965) p. 123; State of California Evidence Code with Official Comments, Cal. Law Revision Com. Rep. (August 1965) pp. 1112-1113; 1965 Stats., ch. 299, § 59, p. 1360 (Code Civ. Proc. § 1871 repeal).

when that expert is a child custody evaluator retained "[i]n a contested proceeding involving child custody or visitation rights." (Fam. Code, § 3111; see *Jarman v. HCR ManorCare, Inc., supra,* 10 Cal.5th at p. 381 [principles of statutory harmonization]; *Parsons v. Estenson Logistics, LLC* (2022) 86 Cal.App.5th 1260, 1268 [same].)

Additionally, Family Code section 3111, which authorizes child custody evaluations more generally, in turn relies on the rules adopted by the Judicial Council pursuant to Family Code section 3117. Those rules include rule 5.220 of the California Rules of Court, which requires the trial court to determine and allocate the fees and costs of the evaluation between the parties and require that the evaluation itself "clearly describe[s]" the "[c]ost and payment responsibility for the evaluation." (Cal. Rules of Court, rule 5.220(d)(1)(D), (e)(1)(E).)

In light of our interpretation of the relevant statutes and our remand of the case for the trial court to fully assess mother's ability to pay, we need not reach the constitutional issues mother raises, including that she is indigent, and the re-allocation order impaired her right to equal access to the courts.

## III.

### *The Trial Court's Ruling*

This brings us to whether the trial court abused its discretion in requiring mother to reimburse father after the fact for a portion of the fees Dr. Nelson charged to father for his updated custody evaluation. While the record before us is not entirely clear, it appears that the court failed to consider all the factors relevant to an assessment of mother's ability to reimburse father for the $3,468.75 the court allocated to her.

At the hearing, the trial court stated that it allocated 25 percent of Dr. Nelson's fee to mother based on the ratio of her net spendable income to

19

father's, subtracting only her child support payments to father. In other words, it attempted to allocate the cost according to the parties' relative post-tax income. While the parties' relative post-tax incomes may be considered in evaluating a parent's ability to pay, the ability to pay cannot be fairly assessed without consideration of other factors, including certain of the parties' expenses. Where one party's income is very limited, the bite that expenses may take out of her income may reduce, or even eliminate, her ability to pay court-imposed costs.

Here, it is at best unclear which of mother's expenses the trial court considered—other than her monthly child support obligations. On the existing record, it appears the trial court failed to consider mother's $995 per month in rent, her payments for food and utilities and other basic living expenses. The trial court also does not appear to have considered other obligations imposed on her by the family court, including mother's share of the monthly costs of supervised visitation with the minor, and her share of Dr. Nelson's original child custody evaluation and child support arrears, or other debts subject to mother's chapter 13 of title 11 of the United States Code (chapter 13) bankruptcy plan, under which at the time the court ordered the updated report from Dr. Nelson mother was obligated to pay $650 per month for 55 months.

That is not the way to assess a party's ability to pay. As was said in the analogous context of an interim award of attorney fees, "[s]ince expenses are (with very few exceptions, e.g., [Fam. Code] §4071), irrelevant for *child support*, it is perhaps too easy for family law judges to dismiss the expenses on the income and expense declaration in other contexts . . . . [¶] But to do so is error. Expenses *are* relevant to pendente lite attorney fee orders." (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 253 (*Alan S.*); see, e.g., *In re*

20

*Marriage of Rosen* (2002) 105 Cal.App.4th 808, 829-830 [finding that husband was able to pay wife's attorney fees held erroneous including because court failed to consider husband's court-ordered support payments and substantial debts; "On remand, the court must reconsider an award of attorney fees, if any"]; *In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 867-868 [error to order husband to pay wife's attorney fees in amount that would leave him with only $93 per month for other expenses after payment of court-ordered support obligations, taxes and rent].)  Such an award "is definitely not a truncated process" entailing a simple comparison of the parties' "nominal income relative to the other." (*Alan S.*, at p. 254.)

The same is true of an order allocating the expenses of a court-ordered custody evaluation.  Because the trial court here evaluated mother's ability to pay based solely on her income relative to father's, without considering critical basic living expenses, it committed legal error.  The court failed to take into account the fact that, once necessary expenses are subtracted from each parties' income, the lower earning party might have nothing left, whereas the same might not be true for the higher earning party, who might have plenty of left-over discretionary income.

The court's error in this regard was not harmless.  The record before us indicates that father's resources were vastly superior to mother's.  The court made a finding that, according to the most recent child support calculation, father's net spendable monthly income was $9,615 and mother's (after payment of court-ordered child support) was only $3,036.  But, as noted above, the figures used to render the child support calculation took no account of basic living expenses, including rent and food for mother and for her six-year-old son, nor of the $650 per month due each month under

21

mother's chapter 13 plan.[13]  According to her declaration, mother's only asset was $863.67 in a bank account.

Father's cash in the bank was not much more than mother's ($1,049), but he owned a home of undisclosed value,[14] had financed the purchase of two vehicles, and his net monthly earnings as found by the court ($9,615) were significantly higher than his monthly expenses ($7,325).  Further, he apparently *did* have the ability to pay Dr. Nelson's fee—because he paid it.

Given the court's error, we must remand the allocation issue with directions for the court to engage in a proper ability-to-pay inquiry.  (See, e.g., *Alan S.*, *supra*, 172 Cal.App.4th at pp. 258, 263.)

## IV.

### *Conclusion*

In view of our decision to remand the case for further proceedings adhering to our interpretation of the statutes to require an assessment of ability to pay, we need not reach the constitutional challenges mother raises

---

[13]  Expenses identified by mother in her most-recent Income and Expense Declaration included:  approximately $2,964 in basic living expenses (such as rent, unreimbursed job-related expenses, utilities, groceries, car and other expenses), $800 per month in other court-ordered costs (for counseling fees and expenses associated with supervised visitation), and $75 per month in payments toward credit card debt and a personal loan.  At a minimum, the court needed to assess mother's ability to pay for Dr. Nelson's further report after taking into account the basic living expenses, family court-related expenses (such as child support, supervised visitation costs, and previously ordered expert fees), and chapter 13 plan obligations that she can prove by at least a preponderance of the evidence.

[14]  Father's income and expense declaration states that the value of his real property is "unk[nown]" but reflects he is paying about $2,300 in monthly mortgage, insurance and real estate taxes.  It is unclear what equity he may have in the home.  (See *Alan S.*, *supra*, 172 Cal.App.4th at pp. 255, 258.)

based on her claim that she is indigent and that requiring her to pay court costs in that circumstance violates her constitutional rights.

We conclude with the following observations. Like some other tools that are available in family court proceedings, child custody evaluations can be expensive. Yet many of the litigants who appear in family law courtrooms are individuals of modest means and allocating the costs of these and other expensive tools, even in part, to those who cannot afford to pay for them threatens their ability to provide for their own and their children's most fundamental needs. (Cf. *Jameson v. Desta* (2018) 5 Cal.5th 594, 619-620 [cost of private court reporter]; *Solorzano v. Superior Court* (1993) 18 Cal.App.4th 603, 615 [costs of privately compensated discovery referee].)

We recognize that private child custody evaluators can perform an important function in family law cases, and a family court may use them where one or both parties can afford to pay their fees. What it may not do, however, is use that expensive tool and then allocate the costs, even in part, to a litigant who cannot afford them. Before allocating any portion of a custody evaluator's fees to a litigant who objects that he or she cannot afford to pay them, the court must thoroughly assess that litigant's ability to pay, taking into account not only income and assets but also indebtedness, ongoing basic expenses and other obligations, including those previously imposed by the court itself earlier in the litigation. Justice and fairness require nothing less.

## DISPOSITION

The May 28, 2019 order directing appellant to reimburse respondent $3,469 is vacated, and the matter is remanded for further proceedings consistent with the views expressed in this opinion. Appellant shall recover her appellate costs.

_____

STEWART, P.J.

We concur.

_____

MILLER, J.

_____

MARKMAN, J.*

*Peterson v. Thompson* (A157874)

_____

\* Judge of the Alameda Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court: Placer County Superior Court

Commissioner:     Hon. John Paulsen

Counsel:

A.K. Peterson, in pro. per., for Plaintiff and Appellant.

No appearance for Defendant and Respondent.